*Electronically Filed*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CASE NO. 3:20-CV-450

| | |
|---|---|
| JACOB "JACK BRADLEY, et al. | PLAINTIFFS |
| V.    **DEFENDANT MOREHEAD STATE UNIVERSITY'S MOTION TO DISMISS** | |
| JEFFERSON COUNTY PUBLIC SCHOOLS, ET AL. | DEFENDANTS |

Defendant, Morehead State University, by counsel, moves the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss all claims against it with prejudice. In support of its motion, the University states as follows:

## INTRODUCTION

Plaintiffs, Jacob "Jack" Bradley and his parents, Daniel Bradley and Judith Bradley, have sued the Defendants, including Morehead State University (MSU), claiming denial of a free and appropriate public education (FAPE) under the Individuals With Disabilities Education Act (IDEA) (20 U.S.C. § 1400, *et seq.*), as well as corresponding alleged violations of (1) the due process clause of the Fourteenth Amendment of the United States Constitution, (2) Section 504 of the Rehabilitation Act (29 U.S.C. § 794), and (3) the American With Disabilities Act (42 U.S.C. § 12132). All of Plaintiffs' claims arise of out an alleged failure by Defendants to implement the individualized education plan (IEP) prepared for Jack by Defendant Jefferson County Public Schools (JCPS) under the IDEA. However, the allegations of the Plaintiffs' Complaint are insufficient to trigger liability under any claim against MSU because, as a matter of law, MSU is a postsecondary school, and not a secondary school required to implement IEPs under the IDEA or any other provision of law through which Plaintiffs seek to "shoehorn" their claim. Accordingly, MSU moves to dismiss all claims against it with prejudice.

## STANDARD OF REVIEW

A civil complaint is subject to dismissal under Federal Rule of Civil Procedure 12(b)(6) if it fails to state a claim upon which relief can be granted. The Rule 12(b)(6) review standard "essentially allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Seger v. City of Lancaster, Ky.*, 930 F. Supp. 2d 821, 823 (E.D. Ky. 2013). When evaluating a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the complaint need not contain "detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

This Court's Rule 12(b)(6) review must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. West Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 556 U.S. at 678. The Court also need not accept as true allegations contradicted by facts of which the Court may take judicial notice. *See Williams v. CitiMortgage, Inc.*, 498 F.

App'x 532, 536 (6th Cir. 2012) (citing *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405–06 (S.D.N.Y. 2001)); *see also Miles v. Federal Insurance Company*, 5:16-CV-15-KKC, 2017 WL 559582, at *2– 3 (E.D. Ky. Feb. 10, 2017).

## STATEMENT OF THE CASE

Jack Bradley was a high school student with a disability and eligible for special education services from Defendant JCPS under the IDEA. *See* D.E. 1, Complaint, pp. 2. Jack Bradley was a dual enrollment student in 2017-2018 and 2018-2019 at his high school, duPont Manual High School, within JCPS, and MSU's Craft Academy for Excellence in Science and Mathematics (Craft Academy). *Id*. at p. 7 ¶ 22.

### I.     OVERVIEW OF MSU'S CRAFT ACADEMY

Craft Academy is an "accelerated residential school for eleventh and twelfth grade students, hosted by and located at MSU." Complaint, p. 2. It is undisputed that Craft Academy is a dual enrollment program whereby select high school students earn college credit from MSU by attending MSU classes, taught by MSU faculty, while living on campus at MSU, thus completing up to two years of university coursework at MSU.

To be certain, while MSU is *permitted* to grant high school diplomas to Craft graduates, Craft is part of MSU and Kentucky's postsecondary education system established under KRS Chapter 164, offering college courses taught by college professors for college credit. It is *not* part of Kentucky's elementary and secondary school system established under KRS Chapters 156 through 162.[1]  *See* KRS 158.140 (providing *if* MSU's Board of Regents provides the State Commissioner of Education assurances "that the program of study completed by [Craft] students,

---

[1] As explained below, the Kentucky Attorney General's past reliance on KRS 164.7874 to conclude otherwise is misplaced. That statute says Craft is a "high school," but only for purposes of determining a student's eligibility and issuing awards from Kentucky's educational excellence scholarship fund administered by the Kentucky Higher Education Assistance Authority.  *See* KRS 164.7879 and 164.7881.

in combination with previously earned secondary credits, meets the minimum high school graduation requirements," then "the Craft Academy for Excellence in Science and Mathematics, located at Morehead State University, *may* award a diploma," emphasis added); KRS 164.290 (providing Morehead State University a state university established and governed by Kentucky's postsecondary education system); KRS 164.002 and 164.098 (providing Craft Academy is established as "a *college-level* course of study" developed and governed by Kentucky's postsecondary education system, in which the student "is enrolled in a high school *and* postsecondary institution simultaneously" and "receives credit from both the high school *and* postsecondary institution in which the student is enrolled…including participating in…the Craft Academy for Excellence in Science and Mathematics," emphasis added).

Nor is Craft like actual high schools that happen to be operated on a university campus, such as Eastern Kentucky University's Model Laboratory School, which unlike Craft are separately established pursuant to KRS 164.380 to provide learning experiences for student teachers, not a dual credit program established to offer college courses taught by college faculty for college credit while living on a college campus. *See also* https://model.eku.edu/about-model (last visited August 18, 2020). Accordingly, KRS 158.140 provides a Craft student may nonetheless obtain his or her diploma from his or her home school district, in this case, JCPS. *See also* Appendix A: KDE's May 15, 2017 letter to Assistant Attorney General Taylor Payne ("Gatton and Craft are created as programs of WKU and MSU respectively, not as programs of one or more school districts. Gatton and Craft are funded from the budgets of the respective postsecondary institution, not from the budget for P-12 education.").

## II.  OVERVIEW OF JACK'S TIME AT MSU'S CRAFT ACADEMY[2]

The underlying facts giving rise to this lawsuit can be summarized as follows:

Jack entered Craft in the fall of 2017. Because his parents felt the fifteen hour course requirement was too onerous, they asked for a lessened course load. MSU accommodated this request, reducing Jack's course load from fifteen hours to eleven hours each term. Prior to his first day of class, Jack met with MSU's Disability Services Office, which provided Jack additional, extensive academic accommodations. MSU also provided Jack further social and educational support, although Jack failed to take full advantage of it.

MSU representatives communicated repeatedly with Jack's parents to address any issues about Jack's needs. Each time Jack's parents raised a concern, MSU promptly replied and worked with them to create a resolution that was in the best interest of Jack. Simply put, MSU collaborated with Jack and his parents to ensure Jack's success. Jack graduated from Craft Academy with a 3.76 GPA. This success demonstrates the accommodations provided by MSU were reasonably calculated to enable him to achieve his goals of academic success, graduation, and acceptance to a prestigious college or university. MSU believes Jack currently attends Centre College on a full scholarship.[3]

## III.  PLAINTIFF'S CLAIMS AGAINST MSU

Despite these facts, Plaintiffs allege the Defendants violated the law because they did not implement Jack's IEP from JCPS during his time at Craft Academy. *Id.* at p. 8 ¶ 29. Accordingly, after Jack graduated with honors and enrolled under scholarship at Centre College,

---

[2] Information regarding Jack and his parents is provided consistent with the provisions 34 CFR 99.31(a)(9)(iii)(B) governing student information provided to the Court in actions brought by the student.
[3] Should the Court deny MSU's motion to dismiss, MSU intends to demonstrate that, under these facts, it satisfied the substantive FAPE standard set in *Endrew F. ex rel. Joseph F. Douglas Cty. Sch. Dist. RE-1*, 137 S. Ct. 988 (2017), in which the Supreme Court of the United States held that "to meet its substantive obligation under the IDEA, a school must offer an IEP reasonably calculated to enable a child to make progress appropriate in light of the child's circumstance." *Id.* at 999.

Plaintiffs requested a due process hearing under the IDEA through Defendant Kentucky Department of Education (KDE). The hearing officer dismissed all claims against all Defendants prior to a hearing. *Id.* at p. 8 ¶ 35. Plaintiffs then appealed to the KDE's Exceptional Children Appeals Board (ECAB). *Id.* at p. 8 ¶ 36. The ECAB upheld the dismissal of MSU, finding it was not a secondary school subject to the IDEA. *See* ECAB Final Decision and Order, Appendix B; D.E. 1-5. However, on May 21, 2020, the ECAB determined Jack was entitled to a hearing against Defendant JCPS on whether it appropriately offered him FAPE. *See id.*, Appendix B. Plaintiffs then filed the current lawsuit seeking review of the ECAB's dismissal of their claims under the IDEA and new dependent claims under Section 504, the ADA, and the Fourteenth Amendment.

## ARGUMENT

Plaintiffs' claims against MSU must be dismissed as a matter of law because they fail to state a claim on which relief can be granted, for several reasons:

First, as a matter of law, the IDEA does not apply to postsecondary courses and programs like those offered by MSU at Craft.

Second, even if the IDEA did entitle Jack to FAPE in his courses and programs at Craft, it is his home district of JCPS, not MSU, who must provide it.

Third, because Plaintiffs' claims under Section 504, the ADA, and the Fourteenth Amendment are nothing more than repackaged claims for denial of FAPE under the IDEA, those claims must likewise, and for other reasons, be dismissed as a matter of law.

## I. PLAINTIFFS IDEA CLAIMS AGAINST MSU MUST BE DISMISSED.

*A. The IDEA does not apply to Craft's postsecondary courses and programs.*

The IDEA requires states to submit a plan that provides assurances to the United States Secretary of Education that the State has policies and procedures in effect to provide FAPE to all children with disabilities residing in the state between ages 3 and 21. *See* 20 U.S.C. § 1412. The provisions of IDEA apply to political subdivisions of the State that are involved in the education of children with disabilities, namely, the state educational agency ("SEA"), local educational agencies ("LEAs"), and educational service agencies ("ESAs"). *See* 20 U.S.C. § 1413. Pertinent Kentucky Administrative Regulations satisfy Kentucky's obligation to provide FAPE under the IDEA by indicating an LEA such as JCPS shall make FAPE available to all children with disabilities aged 3 to 21 residing within its district's boundaries who have not received a high school diploma. *See* 707 KAR 1:290.[4] However, neither the IDEA nor Kentucky's corresponding statutes and regulations expressly state whether postsecondary institutions and programs like MSU and Craft must comply with the IDEA and its requirements for FAPE.

In the absence of direct legislative input on a certain issue, the decisions and opinions of agencies charged with overseeing, coordinating, and ruling on relevant issues, such as the KDE and USDOE, are entitled to deference. *Auer v. Robbins*, 519 U.S. 452, 456-67, 462 (1997) (superseded on unrelated grounds by regulation as stated in *Baden-Winterwood v. Life Time Fitness, Inc.*, 566 F.3d 618 (6th Cir. 2009)); *Commonwealth v. Family Home Health Care, Inc.*, 98 S.W.3d 524, 527 (Ky. App. 2003). Here, the KDE and USDOE have repeatedly confirmed MSU does not have to comply with the IDEA and FAPE.

---

[4] This regulation defines an LEA to mean "a public local board of education or other legally constituted public authority that has either administrative control or direction of public elementary or secondary schools in a school district or other political subdivision of the Commonwealth." MSU does not meet the definition of an LEA.

On May 15, 2017, the KDE issued an opinion at the Kentucky Attorney General's request concerning whether provisions of Part B of the IDEA must be implemented at Craft. That opinion concluded:

1. Craft is a postsecondary program not anticipated by IDEA to guarantee FAPE;

2. Craft is not an LEA with the responsibility to make FAPE available to children with disabilities; and

3. Craft is not an LEA by virtue of performing a service or function to local school districts because they have no contractual relationship with public school districts.

*See* Appendix A: Copy of May 15, 2017 KDE opinion.

Equally important, on September 17, 2019, the USDOE issued guidance on dual enrollment programs like Craft that confirmed the KDE's conclusions. Notably, the USDOE's guidance established (1) FAPE under Part B of the IDEA does not include postsecondary education; and (2) regardless, IDEA funds can only be applied to dual credit programs in certain limited conditions. *See* Appendix C: Excerpts from September 17, 2019 USDOE guidance.[5]

The USDOE guidance explained when those limited conditions are met. First, the education provided at the dual enrollment program must be considered secondary school education in the state; and second, the student's IEP team must determine that the courses offered as part of the dual enrollment program are necessary to provide the student with FAPE. Appendix C, at Pages 3-4 at Questions 6 and 7 (emphasis added). As a matter of law, MSU is not considered a secondary school within Kentucky. Therefore, this exception does not apply.

---

[5] The USDOE reached the same outcome in Colorado Early Colleges – Fort Collins (OCR Case No. 08-19-1158). While OCR addressed the student's complaint in connection with his rights under Section 504 of the Rehabilitation Act, OCR held: "As postsecondary institutions, IEPs are not in effect in college coursework." Therefore, "student IEPs are not required to be implemented in postsecondary classes, even if those classes are held on a high school campus." The same principle applies to MSU's Craft Academy. *See* Appendix D, pp. 2-3: May 30, 2019 decision in OCR Case No. 08-19-1158.

Plaintiffs' may rely upon on a September 22, 2017 Kentucky Attorney General Opinion (OAG 17-021), which followed the aforementioned KDE opinion, to argue MSU is required to provide FAPE. *See* Appendix E. However, reliance upon this OAG is in error. For instance, one of the statutes on which the Attorney General relied, KRS 164.7874, states Craft is a "high school," but only for purposes of determining a student's eligibility for awards from Kentucky's educational excellence scholarship fund administered by the Kentucky Higher Education Assistance Authority. *See* KRS 164.7879 and 164.7881.

Other points in the Attorney General's opinion are similarly misplaced. First, MSU (and thus Craft) does not operate at the "control" or "direction" of local schools like JCPS. Conversely, MSU does not control or direct schools like JCPS. Second, MSU does not have any contractual relationship to perform services or functions for local schools like JCPS. Third, as even the Attorney General has recognized, while students enroll at Craft for college credit, their primary enrollment stays with their home high school. *See* KRS 164.002(5) and (6); OAG 17-021. All of these points are undisputed. Finally, the Attorney General's opinion in OAG 17-021 is not binding. Rather, it is an opinion, rendered outside of any adversarial or adjudicatory context, and MSU was not a party. KRS 15.020; KRS 15.025; 40 KAR 1:010; 40 KAR 1:020; *Medley v. Board of Ed.*, 168 S.W.3d 398, 402 (Ky. App. 2004).

For these reasons, the IDEA and FAPE do not apply to MSU.

B.   *Even if the IDEA entitled Jack to FAPE at Craft, Jack's home district—JCPS— must provide it, not MSU.*

Assuming Plaintiff is correct that Jack should have received FAPE for attending Craft, Jack's home district—JCPS—would be responsible. The USDOE's September 17, 2019 guidance on dual enrollment courses is dispositive, requiring dismissal of MSU herein.

The USDOE's September 2019 guidance makes it clear that postsecondary institutions like MSU do not have to provide FAPE. Appendix C, USDOE guidance at Pages 4 (Questions 6 and 8) and 9 ("FAPE under IDEA Part B does *not* include postsecondary education," emphasis added); *see also* KDE May 15, 2017 letter, Appendix A ("It follows that postsecondary programs, including those at Gatton and Craft, are not those anticipated by IDEA to guarantee FAPE . . . If Gatton and Craft are not secondary schools, they cannot be defined as LEAs and do not have the responsibility to make FAPE available to children with disabilities.").

To be certain, the USDOE has confirmed the responsibility for providing and paying for services in dual credit or enrollment programs rests, if anywhere, *with the student's home school district*, which in this case is JCPS. *See* Appendix C, USDOE guidance at Page 10 (stating "*school districts* must ensure that the services that are included in a student's IEP that are deemed necessary for the provision of FAPE to the student are provided at public expense and at no cost to the parents, and the *school district* may pay for those services with IDEA funds," and further stating that "[w]hether the *school district* is obligated to provide and pay for other supports and related services . . . is a determination that must be made on an individual basis by the student's IEP Team.") (emphasis added). In other words, the USDOE confirms there is no legal basis for alleging *MSU* denied Jack FAPE under the IDEA.

## II.  PLAINTIFFS' DUE PROCESS CLAIM FAILS.

Plaintiffs contend they are entitled to a due process hearing against MSU under the IDEA.  However, this argument is fundamentally flawed because, for the reasons explained above, the IDEA simply does not apply to MSU or its Craft Academy.

Furthermore, Plaintiffs do not have a property interest in FAPE to support a Due Process claim against MSU since it is a post-secondary institution.  "[T]o state a successful procedural due process claim, [a plaintiff] must establish the existence of a protected property interest." *Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000).  For the reasons articulated above, Plaintiffs do not have a property interest in FAPE against MSU.  *See also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35, (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected.").

Finally, Plaintiffs' due process claim is general in nature.  The Complaint merely states that "[t]he Defendants[sic] actions have deprived Plaintiffs of their Constitutional, statutory and regulatory rights and privileges afforded to them."  D.E. 1, Complaint ¶ 53.  This vague description is merely "a formulaic recitation of the elements of a cause of action [which] will not do."  *Twombly*, 550 U.S. at 555.  This vagueness alone is grounds for dismissal of Plaintiffs' Due Process claim.  Therefore, Plaintiffs' Due Process claim fails.

## III.  PLAINTIFFS' ADA AND SECTION 504 CLAIMS FAIL.

The Complaint is clear that Plaintiffs' ADA and Section 504 claims are in reality merely another vehicle to pursue their denial of FAPE claim under the IDEA.[6]  "Based solely on his disabilities, Plaintiff Jack Bradley was excluded from participation in the Craft Academy

---

[6] Under controlling case law, Plaintiffs' ADA and Section 504 claims may be analyzed together as the two schemes provide the same remedies, procedures, and rights.  *See Thompson v. Williamson County*, 219 F.3d 555, 557 n.3 (6th Cir. 2000); *Maddox v. University of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995).

program unless he declined the receipt of special education and related services called for in his IEP." D.E. 1, Complaint ¶ 58. "The Defendants failed to provide Plaintiff Jack Bradley with FAPE by failing to implement his IEP." *Id*. at ¶ 63.

The law is clear that Plaintiffs' must allege something in addition to denial of FAPE to survive a legal challenge to their ADA Section 504 claims. "To prove discrimination in the education context, something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown." *S.S. v. Eastern Kentucky University*, 532 F.3d 445, 454 (6th Cir. 2008) (quoting *Sellers v. Sch. Bd. of Manassas*, 141 F.3d 524, 528-29 (4th Cir. 1998)).

Therefore, the Court should dismiss the ADA and Section 504 claims against MSU.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims against MSU should be dismissed in their entirety, with prejudice.

Respectfully submitted,

STURGILL, TURNER, BARKER
& MOLONEY, PLLC

BY: */s/ Joshua M. Salsburey*
    Joshua M. Salsburey
    Jessica R. Stigall
    333 West Vine Street, Suite 1500
    Lexington, Kentucky 40507
    Telephone: 859.255.8581
    E-mail: jsalsburey@sturgillturner.com
    E-mail: jstigall@sturgillturner.com
    *Counsel for Defendant, Morehead State University*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 18, 2020, I e-filed the foregoing using the Court's ECF system, which will serve all counsel of record.

| | |
|---|---|
| Marianne Chevalier<br>Chevalier & Kruer, PSC<br>2216 Dixie Highway<br>Fort Mitchell, KY  40117<br>*Counsel for Petitioners* | mchevalier@lawcg.com |
| Todd G. Allen<br>Ashley Lant<br>Kentucky Department of Education<br>300 Sower Blvd. 5th Floor<br>Frankfort, KY  40601<br>*Counsel for Kentucky Department of Education* | todd.allen@education.ky.gov<br>ashley.lant@education.ky.gov |
| Dana L. Collins<br>Mark S. Fenzel<br>Matthew P. Dearmond<br>Middleton Reutlinger<br>401 South Fourth Street Suite 2600<br>Louisville, KY  40202<br>*Counsel for Jefferson County Public Schools* | dcollins@middletonlaw.com<br>mfenzel@middletonlaw.com<br>mdearmond@middletonlaw.com |

            */s/ Joshua M. Salsburey*
            Counsel for Defendant, Morehead State University

01307984.DOCX