UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:20-CV-00450-GNS

*Electronically Filed*

JACOB "JACK" BRADLEY,                                                                PLAINTIFFS
JUDITH BRADLEY, AND
DANIEL BRADLEY

v.

JEFFERSON COUNTY PUBLIC SCHOOLS, ET AL.                              DEFENDANTS

### JEFFERSON COUNTY PUBLIC SCHOOLS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, Jefferson County Public Schools, (hereinafter "JCPS"), by counsel, moves the Court pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Civ. P. 56(a) to dismiss all claims against it or, in the alternative, grant it summary judgment as a matter of law. In support of its motion, JCPS states as follows:

### INTRODUCTION

Plaintiffs' Jacob "Jack" Bradley, Judith Bradley, and Daniel Bradley (collectively "Plaintiffs" or the "Bradleys") Complaint purports to state various claims against JCPS in connection with Jack's education during the 2017-2018 and 2018-2019 school years. The Complaint gives passing reference to alleged constitutional violations and other federal statutory claims, however, Plaintiffs' case can be distilled down to one under the Individuals with Disabilities Education Act (IDEA). Specifically, whether and to what extent JCPS owed certain obligations under the Act with respect to Jack's attendance at the Craft Academy for Excellence in Science and Mathematics ("Craft") located at Morehead State University ("MSU"), and whether

JCPS complied with those obligations, if any. Jack was not deprived of the opportunity to attend Craft. Indeed, he and his parents elected to attend the program for both the 2017-2018 and 2018-2019 school years. Rather, the Plaintiffs contend that the IDEA required that JCPS use funds provided to it under the Act to provide and pay for services while Jack attended the program in Morehead, Kentucky. The IDEA imposes no such obligation, and the Bradleys' unilateral decision to attend Craft does not raise that statutory floor.

## BACKGROUND

Craft is a residential, dual-credit program created and offered by MSU. Its funding comes from the budget of MSU, a postsecondary school, not from the state budget for P-12. Programs at Craft are exclusively and 100% postsecondary coursework for which a student receives both college and high school credit. High school students admitted into the program attend classes with other MSU undergraduates. Craft is not under the control of, nor does it answer to, any local school district board of education, nor does any such district have control over who is admitted or how instruction is provided. As the Kentucky administrative appeals panel (ECAB) recognized, Craft is "simply a program that enables high school students to attend MSU classes alongside MSU undergraduate students and receive dual credit for those classes." *See* Exhibit A to JCPS Answer, Crossclaim and Third-Party Complaint, DN 11-01 ("JCPS Answer"), p. 8.[1]

Prior to the 2017-2018 school year, Jack applied for, and was accepted into, Craft. On May 15, 2017, the Kentucky Department of Education (KDE) issued a letter addressing the applicability of the IDEA to programs such as Craft. *See* Exhibit C to JCPS Answer, DN 11-03. In the letter, the Department recognized that the "regulatory language applicable to IDEA suggests neither postsecondary institutions nor the local school districts are required to implement student

---

[1] "ECAB" stands for Exceptional Children Appeals Board which is the second tier in the administrative system developed by the Kentucky Department of Education for hearing cases that arise under IDEA. 707 KAR 1:340 Sec. 12.

2

IEPs at Gatton and Craft." *Id*., p. 4. That same week, JCPS conducted an ARC meeting to develop and revise Jack's IEP, alongside his parents and other representatives.[2] The record of the meeting reflects that the committee, which included Jack and his parents, were in agreement as to the amendments to Jack's IEP. *See* Exhibit D to JCPS Answer, DN 11-04 p. 5. Because Jack had recently been accepted into Craft, the Bradleys asked what the IEP team felt would be needed to support Jack at Craft. *Id.* The Bradleys were informed of the school district's position that it was not obligated to implement Jack's IEP at Craft, but that JCPS would work with the family and disability office to ensure appropriate accommodations were in place nonetheless. *Id*., p. 9. JCPS further informed Plaintiffs that it could implement Jack's IEP and provide special education services in the appropriate secondary school program in Jefferson County if Jack chose to stay there. The Bradleys also inquired as to how a dual credit opportunity would work if Jack remained at Manual, his home school, and took dual credit courses at the University of Louisville instead. *Id*., p. 5. Ultimately, the Bradleys expressed that "the JCPS IEP [was] a wonderful plan for Jack and [they] appreciated it." *Id*.

Following this meeting, the Bradleys continued to request that JCPS reverse its position regarding its legal obligations with respect to Craft. *See* Exhibit B to JCPS Answer, DN 11-02 p. 8, ¶ 66. The Bradleys were again advised that they had the right to unilaterally enroll Jack in any program outside of JCPS, but that the district's obligation under the IDEA was to offer FAPE for Jack, which it met by offering same in Jefferson County. *Id*., p. 9, ¶ 67. Ultimately, the Bradleys elected to enroll Jack in the Craft program for the 2017-2018 and 2018-2019 school years.

---

[2] IDEA requires school districts to convene Admissions and Release Committee meetings to discuss and develop programming for students. 707 KAR 1:002(1). Often these committees discuss development of an Individual Education Plan (IEP) for students. These meetings will be referred to interchangeably in this brief as "ARC meetings" and "IEP Team meetings".

Jack eventually graduated with a diploma from Manual High School on June 8, 2019. Two days prior, the Bradleys filed their original due process request ("Original Request"), contending that JCPS violated the IDEA and corresponding state regulations by not implementing his IEP at Craft. *See* Exhibit B to JCPS Answer, DN 11-02. In the Original Request, the Bradleys acknowledged that JCPS implemented Jack's IEP during his 2014-2017 school years and that, during the 2016-2017 year, Jack's ARC committee encouraged him to participate in a dual enrollment course at the University of Louisville, one of the postsecondary institutions located within the school district. *Id.*, p. 5, ¶¶ 24-25.

On September 3, 2019, JCPS filed its Response to Plaintiffs' Amended Request[3] and Motion to Dismiss. In this motion, JCPS asked the Hearing Officer to dismiss the Plaintiffs' claims against it on the grounds that it had complied with its legal obligation under IDEA by offering a free appropriate public education (FAPE) at a school with access to transition services and dual-credit programming in Louisville. *See* Exhibit F to JCPS Answer, DN 11-06 pp. 6-7. Thus, the fact that the Bradleys unilaterally elected to enroll Jack at Craft, a residential program through MSU in Rowan County, did not render the program/services *offered* by JCPS within the district in violation of the IDEA. *Id.*

While this motion was pending, the United States Department of Education ("USDOE") issued guidance in the form of a "Questions and Answers" document (hereinafter "Guidance"). *See* Exhibit G to JCPS Answer, DN 11-07. In its Guidance, the USDOE clarified that school districts could use IDEA Part B funds to support students with disabilities with IEPs in dual enrollment programs *only* if certain conditions are met. First, "the student's IEP Team must determine that the courses offered as part of a dual enrollment program are necessary to provide

---

[3] In response to a challenge to their standing to represent filed assert claims on behalf of their adult son, the Bradleys retained counsel and amended their Original Request to, among other things, add KDE and MSU as additional parties. With respect to JCPS, the Amended Request incorporated by reference all allegations set forth in its Original Request.

4

the student with FAPE." *Id*., p. 4. Second, because FAPE does not include postsecondary education, school districts are only permitted to provide or pay for services that constitute FAPE in postsecondary education settings with IDEA Part B funds "if the education provided is considered secondary school education in the State." *Id*. The following day, both MSU and KDE filed their respective motions to dismiss, relying heavily on, among other things, the Guidance from the USDOE.

On November 12, 2019, the Hearing Officer granted the motions to dismiss filed by KDE and MSU. This holding was premised on the finding that "Craft is not a secondary school and is not regulated or controlled by KDE." *See* 11/12/19 Orders, p. 2, attached hereto as <u>Exhibit 1</u>. The Hearing Officer recognized that Craft is a postsecondary program, as the Kentucky General Assembly "has not defined Craft as a secondary program subject to the oversight and control of KDE, including the [IDEA] compliance." *Id*. Therefore, because the Kentucky General Assembly has not defined Craft as a secondary school and because Jack's IEP team did not determine that attendance at Craft was necessary for him to receive FAPE, the Hearing Officer held that the claims against KDE and MSU must be dismissed. *Id*., p. 3. The Hearing Officer then applied the same reasoning to dismiss the claims against JCPS. *See* Exhibit I to JCPS Answer, DN 11-09.

Plaintiffs appealed these decisions to the ECAB. On May 21, 2020, the ECAB issued its order sustaining the decision of the Hearing Officer to dismiss both MSU and KDE on the grounds that, as a matter of law, Craft is not secondary education under Kentucky law. *See* Exhibit A to JCPS Answer, DN 11-01 p. 6. Thus, because school districts "are only permitted to provide or pay for services with FAPE funds if (1) the dual credit program was required to provide FAPE **and** (2) if the education provided is considered secondary school education," FAPE obligations could not extend to KDE and MSU with respect to Jack's attendance at Craft. *Id*., pp. 5, 10 (emphasis original). The ECAB further noted that dismissal without a hearing was proper because no evidentiary hearing could countermand the applicable law dictating that Craft is not secondary

education. *Id.*, p. 10. Despite these principles applying equally to JCPS, the ECAB's order did not expressly state that it was also dismissing all claims against JCPS, though this disposition emanated from its reasoning. Indeed, upon a motion for clarification, the ECAB noted that its remand with respect to JCPS was limited to the determination as to whether JCPS offered FAPE prior to the Plaintiffs' decision to attend Craft. *See* Exhibit K to JCPS Answer, DN 11-12. This matter followed.

## STANDARD OF REVIEW

In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sherley v. Thompson*, 69 F. Supp. 3d 656, 659 (W.D. Ky. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Plausibility turns on whether the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). The court must accept as true the well-pleaded factual allegations of the complaint in ruling on a motion to dismiss. *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). However, the standard "requires more than a bare assertion of legal conclusions." *Andrews v. State of Ohio*, 104 F.3d 803, 806 (6th Cir. 1997). Indeed, a complaint "must contain either direct or inferential allegations establishing each material element required for recovery under some viable legal theory." *Id*.

Moreover, the Court's analysis is not transformed merely because a motion to dismiss refers or relies on some outside document, as a district court may "consider a document not formally incorporated by reference in a complaint when the complaint refers to the document and the document is central to the claims." *See Nixon v. Wilmington Tr. Co.*, 543 F.3d 354, 357 (6th Cir. 2008); *see also Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

In the present case, Plaintiffs' claims against JCPS should be dismissed on account that they fail as a matter of law and/or are not pled with the requisite specificity. Dismissal of Plaintiffs'

IDEA claim – and those claims dependent upon it – does not require resorting to issues of fact. For one, as the ECAB noted, no evidentiary hearing could countermand the applicable law dictating that Craft is not secondary education. However, to the extent this Court finds subjecting the present motion, in whole or in part, to the standard set forth in Fed. R. Civ. P. 56(a), Plaintiffs' claims nevertheless fail because there is no genuine issue of material fact that (1) Craft is/was not secondary education, (2) Jack's IEP Team did not determine that his participation at Craft was necessary for FAPE; (3) the Bradleys otherwise agreed with Jack's IEP notwithstanding their disagreeing with JCPS and KDE's legal position as to their obligations at Craft; and (4) JCPS did not discriminate against Jack solely on the basis of his disability.

## ARGUMENT

### I. THE IDEA DID NOT REQUIRE JCPS TO IMPLEMENT JACK'S IEP AT CRAFT ACADEMY.

Plaintiffs' claims against JCPS must be dismissed because, as a matter of law, the IDEA did not require that JCPS implement Jack's IEP, or provide or pay for services that constitute FAPE in the postsecondary education setting that was Craft. Furthermore, Plaintiffs claims with respect to JCPS' obligations vis-à-vis Craft fail for the additional or alternative reason that Jack's IEP team did not determine that attendance at Craft was necessary for him to receive FAPE.

#### A. Plaintiffs Chose a Postsecondary Education Program, Therefore Dismissal Was Appropriate.

The IDEA requires that a free appropriate public education "be available to all children residing in the State between 3 and 21…" 34 C.F.R. §300.101(a). "FAPE" means special education and related services that "include an appropriate preschool, elementary school, or secondary school education…" 34 C.F.R. §300.17. Federal law defines a secondary school as a "nonprofit institutional day or residential school, including a public secondary chart school that provides secondary education, **as determined under State law, except that it does not include any education beyond grade 12**." 20 U.S.C. § 1401(27); 34 C.F.R. § 300.36 (emphasis added).

7

As the ECAB recognized, Kentucky has not determined that Craft is secondary education. Craft is a dual-credit, dual enrollment program as defined under Kentucky law. Chapter 164 in the Kentucky Revised Statutes is entitled, "State Universities and Colleges" and includes statutes defining both "dual credit" and "dual enrollment." "Dual credit" is defined as meaning "a college-level course of study developed in accordance with KRS 164.098 in which a high school student receives credit from both the high school and postsecondary institution in which the student is enrolled upon completion of a single class or designated program of study, including participating in the Gatton Academy of Mathematics and Science in Kentucky or the Craft Academy for Excellence in Science and Mathematics." KRS 164.002(5). Chapter 164 similarly defines "dual enrollment" as meaning a "college-level course of study … in which a student is enrolled in a high school and postsecondary institution simultaneously, including participating the Gatton Academy of Mathematics and Science in Kentucky or the Craft Academy for Excellence in Science and Mathematics." KRS 164.002(6). Further, Kentucky law contemplates that only schools under the control of a local school district are considered "secondary schools." *See* Exhibit A to JCPS Answer, DN 11-01 p. 8. Specifically, KRS 157.320(11) defines "secondary school" as "a school consisting of grades seven (7) through twelve (12), or any appropriate combination of grades within this range as determined by the plan of organization for schools authorized by the district board. Kentucky does not interpret the term, "secondary school" to include Craft.

As the ECAB recognized, Craft is funded from the budget of MSU, not from the budget for P-12. *See id.*, DN 11-01 p. 7. The program is exclusively postsecondary coursework, performed alongside MSU undergraduates. *Id.* Further, no local school district, nor the KDE, has control or supervisory authority over the program, including who is admitted or how instruction is provided. *Id.*, at 7-8. Craft is not a contractor with any local school district, including JCPS, nor does it have any obligation to accept public school students who apply. *Id.*, at 8. Simply put, "[i]t cannot be a secondary school within the meaning of Kentucky statutes." *Id.*

8

In addition to the authority above, both the state and federal Departments of Education have provided authoritative guidance on this issue. The KDE has noted that the "regulatory language applicable to IDEA suggests neither postsecondary institutions nor the local school districts are required to implement student IEPs at Gatton and Craft." *See* Exhibit C to JCPS Answer, DN 11-03 p. 4. Further, the USDOE guidance makes clear that LEAs are only permitted to provide or pay for services with FAPE funds if (1) the dual credit program was required to provide FAPE and (2) if the education provided is considered secondary school education. Because Kentucky law does not consider Craft secondary school education, JCPS' refusal to expend IDEA Part B funds for Jack's attendance at Craft was not a violation of the IDEA.

> **B. The ARC Did Not Determine that Attendance at Craft Was Necessary for FAPE, Therefore Dismissal Was Appropriate.**

The conditions articulated by the USDOE are in the conjunctive, meaning both prongs must be present for a school district to use Part B funds to provide services to students participating in dual enrollment programs. Therefore, even if Craft were secondary education, the Plaintiffs' claims against JCPS nevertheless fail because Jack's IEP Team did not determine that attendance at Craft was "necessary to provide the student with FAPE." This condition is characterized in the affirmative, meaning that the IEP Team must affirmatively determine that attendance at Craft was necessary for the provision of FAPE. That Jack's IEP Team made no such affirmative determination is evident from the logic of the matter, *i.e.* had it been determined that attendance at Craft was necessary, then JCPS would have provided the IDEA-based services, and there would have been no reason for the Bradleys to file their due process request. No evidentiary hearing could countermand this conclusion, as it is a matter of logic, not facts. Because there is no genuine issue as to this material fact, Plaintiffs' IDEA claim must be dismissed.

## II. JCPS COMPLIED WITH ITS OBLIGATIONS UNDER THE IDEA BY OFFERING FAPE, AND PLAINTIFFS' UNILATERAL DECISION TO DECLINE THAT OFFER DOES NOT IMPOSE ADDITIONAL OBLIGATIONS.

The IDEA requires that "[a] free appropriate public education is *available* to all children with disabilities…." 20 U.S.C. § 1412(a)(1)(A) (emphasis added). A local district's obligation is fulfilled when a FAPE is offered. *N.W. ex rel. J.W. v. Boone Cty. Bd. of Educ.*, 763 F.3d 611, 615–16 (6th Cir. 2014). A student's decision to reject that offer does not render the school district in violation of IDEA. *Id.* Moreover, this obligation does not apply to the extent its application "would be inconsistent with State law or practice…." 20 U.S.C. § 1412(a)(1)(B)(i).

As with every regulatory scheme, the IDEA has limits. The Act simply requires that a FAPE be made *available* to the child. It does not require a school district to force a student and his family to accept the programming it makes available to them, but it also does not require the district to accommodate every demand of the student. To Congress' credit, the Act provides families the flexibility and freedom to take advantage of educational opportunities that may fall beyond the purview of the Act.

Here, there is no genuine issue of material fact that JCPS satisfied the base obligation of the Act when it offered Jack FAPE prior to the Plaintiffs' unilateral election to attend Craft. The only matter with which Plaintiffs take "genuine issue" is JCPS' legal position that the law does not require it to implement IDEA services at Craft. Aside from that pure issue of law, the undisputed facts show that the Bradleys felt that the IEP offered by JCPS was "a wonderful plan for Jack" that they appreciated it. *See* Exhibit D to JCPS Answer, DN 11-04 p. 5. Moreover, with regard to Jack's transition needs and postsecondary goals, the Conference Summary Report similarly reveals the Bradleys "agree[d] to [that] section and it [was] accurate." *Id.*, at 8-9. What is more, with respect to concerns about the least restrictive environment, the Report similarly showed agreement among all parties that it was satisfactory. *Id.*, at 11. In addition to failing as a

matter of law with respect to Craft, Plaintiffs' claims also fail to showcase a genuine issue regarding JCPS' offer of FAPE.

### III. PLAINTIFFS' DUE PROCESS CLAIM(S) UNDER 42 U.S.C. § 1983 FAIL AS A MATTER OF LAW.

The due process claim(s) purportedly contained in the Plaintiffs' Complaint fail as a matter of law. First, the Complaint fails to contain sufficient factual matter to state a violation of § 1983. Rather, Plaintiffs broadly assert that Defendants' "actions have deprived [them] of their Constitutional, statutory and regulatory rights and privileges afforded them." *See* Complaint, DN 1, ¶ 53. Plaintiffs offer nothing more than "labels and conclusions" or "formulaic recitation[s]" that the Supreme Court has routinely denounced. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

More to the point, Plaintiffs' due process claims, assuming there are any, fail along with their claims under the IDEA. Aside from its discrimination claims, Plaintiffs' Complaint does not allege any injury independent of JCPS' failure to provide or pay for services at Craft. In other words, its purported claim under § 1983 is simply its IDEA claim repackaged with a brief, formulaic recitation of § 1983 language. Therefore, if JCPS satisfied its obligations with respect to the IDEA, then it necessarily could not have deprived him of any right or privilege.

Plaintiffs' due process claim(s) similarly fail because Plaintiffs do not allege the deprivation of a protected property interest. Indeed, Plaintiffs do not allege any deprivation. Jack and his parents admittedly participated fully in the education process, including as part of the ARC committee. Further, Jack participated in the Craft program. Neither do Plaintiffs stake out a protected property interest. For the reasons discussed above, Jack had no statutory right to FAPE services or Part B funds at the postsecondary program he attended. Thus, he had no property interest from which he was deprived.

11

## IV. PLAINTIFFS' COMPLAINT FAILS TO STATE A CLAIM(S) FOR DISCRIMINATION ON THE BASIS OF DISABILITY PURSUANT TO THE ADA OR REHABILITATION ACT.

Plaintiffs do not allege facts giving rise to a claim of discrimination in violation of the ADA or Rehabilitation Act. Specifically, Plaintiffs do not allege facts indicating that Jack was treated any differently because of his disability. The Complaint asserts that Jack was "excluded from participation" in Craft unless he declined receipt of special education and related services. Complaint, DN 1, p. 11. However, Jack was not "excluded" from the program or denied of any benefits of the program. There is no dispute that Jack participated in the program. Rather, the present dispute concerns whether and to what extent JCPS was obligated to use IDEA Part B funds to help "defray the costs of such programs or services."[4]

To satisfy the causation element of such a claim, Plaintiffs must allege that, but for Jack's specific disability, Defendants would have provided that programming/services. *Ruhl v. Ohio Health Dep't*, 725 F. App'x 324, 338 (6th Cir. 2018), reh'g denied (Mar. 9, 2018). As the Sixth Circuit has held, "[b]oth the Americans with Disabilities Act and the Rehabilitation Act require the challenged discrimination to occur because of disability, which is another way of saying that the plaintiff must establish a but-for relationship between the protested act and the individual's disability." *Gohl v. Livonia Pub. Sch. Sch. Dist.*, 836 F.3d 672, 682 (6th Cir. 2016). Here, Plaintiffs would have to allege that JCPS would have otherwise provided the education/services at issue to a non-disabled student while simultaneously depriving Jack of those services because of his disability. JCPS does not provide any such benefits to its students, disabled and non-disabled alike, who elect to participate in Craft.

Plaintiffs' discrimination claims also fail because they are substantively indistinguishable from the claims under the IDEA. The Sixth Circuit has held that a plaintiff seeking to state a claim

---

[4] It should be noted that tuition, room and board at Craft are covered by the Academy. https://www.moreheadstate.edu/Academics/Craft-Academy/Prospective-Students/Apply-to-the-Craft-Academy

12

under either the ADA or § 504 must prove that they have either been subjected to discrimination or excluded from a program or denied benefits "solely by reason of their disability." *S.S. v. Eastern Kentucky University*, 532 F.3d 445, 454 (6th Cir. 2008) (quoting *Sellers v. Sch. Bd. Of Manassas*, 141 F.3d 524, 528-29 (4th Cir. 1998)). To prove discrimination in this context, "something more than a mere failure to provide the free appropriate education required by [the IDEA] must be shown." *Id*. Here, Plaintiffs have pled nothing more than an alleged failure to provide Jack with FAPE as it pertained to his participation at Craft. Accordingly, their claims must be dismissed.

## V. PLAINTIFFS' CLAIMS SEEKING PROSPECTIVE, INJUNCTIVE RELIEF SHOULD BE DISMISSED AS MOOT.

Federal courts have recognized that if a student has graduated from high school, does not contest his graduation, and seeks prospective relief, their case is moot. *T.S. v. Indep. Sch. Dist.*, 265 F.3d 1090, 1092 (10th Cir. 2001) ("Once a student has graduated, he is no longer entitled to a FAPE; thus any claim that a FAPE was deficient becomes moot upon a valid graduation."). When both factors are present – graduation and prospective relief – any court decision on the merits in those cases would "have no effect on the present or future actions of either party" because the only relief sought is relief that the student can no longer—and in most instances, need no longer— receive. *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116, 1124 (10th Cir. 2008); *Moseley v. Bd. of Educ. of Albuquerque Pub. Sch.*, 483 F.3d 689, 693 (10th Cir. 2007) (holding that graduation moots request for an injunction, as plaintiffs "seeking prospective relief must show more than past harm or speculative future harm."). This is also the rule in the Sixth Circuit. *See Somberg on behalf of Somberg v. Utica Cmty. Sch.*, 908 F.3d 162, 171–72 (6th Cir. 2018) (holding that once a student has graduated and is out of the school system a claim for prospective, injunctive relief is moot because it is impossible for a court to grant meaningful relief).

In their Complaint, Plaintiffs request "injunctive and all 'appropriate relief'" in connection with their IDEA claim(s). The Plaintiffs were more explicit in their Original Request, where they

13

sought "compensatory and transition services to Jack," and sweeping policy change in the form of an order that JCPS "develop an MOU with MSU and the Craft Academy to ensure the provision of FAPE for any of its students with IEPs who qualify for the Craft Academy program," and that it "discontinue its practice of predicating a student's participation in the Craft Academy or any other educational program on relinquishing their IEP." *See* Exhibit B to JCPS Answer, DN 11-2, p. 13.

Here, there is no allegation that Jack did not graduate or that the Plaintiffs are otherwise contesting his graduation. Accordingly, requests for prospective, injunctive relief like the kind sampled above, are moot. Any such claims and/or requests for relief should be dismissed.

## CONCLUSION

For the reasons stated above, Defendant Jefferson County Public Schools respectfully requests this Court dismiss all claims asserted against them by Plaintiffs Jack, Judith, and Daniel Bradley. Plaintiffs' Complaint fails to state a violation of the IDEA as it pertains to JCPS, and there is no genuine issue of material fact as to JCPS' obligation with respect to Craft. This failure is similarly fatal to their identical due process and discrimination claims stemming from the same nucleus, which are further marred by the insufficient nature in which such claims are pled. Whatever standard the Court views the Plaintiffs' claims, all fail as a matter of law.

Respectfully submitted,

  *s/Matt Dearmond*
Mark S. Fenzel
Dana L. Collins
Matthew P. Dearmond
MIDDLETON REUTLINGER
401 South Fourth Street, Suite 2600
Louisville, Kentucky 40202
mfenzel@middletonlaw.com
dcollins@middletonlaw.com
mdearmond@middletonlaw.com
(502) 584-1135
(502) 561-0442 (Fax)
*Counsel for Defendant/Counterclaimant/*
*Crossclaimant/Third-Party Plaintiff,*
*Jefferson County Public Schools*

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed according to the rules of Electronic Court Filing (ECF) in effect for the Western District of Kentucky – Louisville Division on this 30th day of September, 2020, which ECF system will provide a copy of same to all persons registered to receive service in this case, and also served, via email, upon the following:

| | |
|---|---|
| Marianne Chevalier<br>CHEVALIER & KRUER, PSC<br>2216 Dixie Highway<br>Fort Mitchell, Kentucky 40117<br>mchevalier@lawcg.com<br>*Counsel for Plaintiff/*<br>*Counterrespondent* | Joshua M. Salsburey<br>Jessica R. Stigall<br>STURGILL, TURNER, BARKER & MOLONEY,<br>333 West Vine Street, Suite 1500<br>Lexington, Kentucky 40507<br> jsalsburey@sturgillturner.com<br>jstigall@sturgillturner.com<br>*Counsel for Defendant,*<br>*Morehead State University* |
| Todd G. Allen<br>Ashley Lant<br>KENTUCKY DEPARTMENT OF EDUCATION<br>300 Sower Blvd. 5th Floor<br>Frankfort, Kentucky 40601<br>todd.allen@education.ky.gov<br>ashley.lant@education.ky.gov<br>*Counsel for Defendant/Crossrespondent*<br>*Kentucky Department of*<br>*Education* | |

  *s/Matt Dearmond*
*Counsel for Defendant/Counterclaimant/*
*Crossclaimant/Third-Party Plaintiff,*
*Jefferson County Public Schools*

15