UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00450-GNS-CHL

JACOB "JACK" BRADLEY, et al.                                    PLAINTIFFS

v.

JEFFERSON COUNTY PUBLIC SCHOOLS, et al.                         DEFENDANTS

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter is before the Court on Motions to Dismiss filed by Defendants Kentucky Department of Education and Morehead State University (DN 10, 12).  The motions are ripe for adjudication.  For the reasons stated below, the motions are **GRANTED**.

## I.     <u>BACKGROUND</u>

### A.     <u>Statement of Facts</u>

Plaintiffs Jacob "Jack" Bradley ("Jack") and his parents, Daniel Bradley and Judith Bradley (collectively the "Bradleys"), have sued Defendants Jefferson County Public Schools ("JCPS"), Kentucky Department of Education ("KDE"), and Morehead State University ("MSU").  (Compl. 1-2, DN 1).  The Bradleys' claims arise out of the purported failure of JCPS, KDE, and MSU to implement the "individualized education plan" ("IEP") prepared for Jack by JCPS under the Individuals with Disabilities Education Act ("IDEA").  (Compl. ¶¶ 1, 7-9, 49-50, 60-64 (citing 20 U.S.C. § 1400, *et seq.*)).  The Complaint also alleges violations of the Due Process Clause of the Fourteenth Amendment of the United States Constitution, Section 504 of the Rehabilitation Act (29 U.S.C. § 794), the Americans with Disabilities Act (42 U.S.C. § 12132), and 42 U.S.C. § 1983.  (Compl. ¶¶ 1, 7-9, 51-64).

The Complaint alleges that JCPS identified Jack—who resided with his parents in Jefferson County, Kentucky, within the boundaries of JCPS—as a student with disabilities who required special education and related services under the IDEA.[1]   (Compl. ¶¶ 1, 5, 15, 16).   Further, JCPS identified Jack as a gifted student—under KRS 157.200—who was entitled to a "free and appropriate public education" ("FAPE") which included special education and related services pursuant to his IEP and gifted student services plan ("GSSP").   (Compl. ¶¶ 1, 5, 17).   JCPS implemented Jack's IEP and GSSP during his 2014-15, 2015-16, and 2016-17 school years. (Compl. ¶¶ 17, 19).

The Bradleys claim that Jack took a dual credit University of Louisville course during the 2016-17 school year, and his IEP was implemented by JCPS during this course.   (Compl. ¶ 20). Additionally, with the encouragement of JCPS teachers and administrators, and with the knowledge of his JCPS Admission and Release Committee ("ARC"), Jack applied to the Craft Academy for Excellence in Science and Mathematics ("Craft Academy"), an accelerated residential school for exceptional eleventh and twelfth grade students, hosted by and located at MSU in Morehead, Kentucky.   (Compl. ¶¶ 1, 21-22, 26).   He was accepted to participate in the Craft Academy.   (Compl. ¶ 21).

The Complaint asserts that Jack was dually enrolled as a high school student at duPont Manual High School within JCPS and Craft Academy during the 2017-18 and 2018-19 school years.   (Compl. ¶¶ 1, 5, 10, 22, 26).   Jack's IEP purportedly included a transition plan that required a residential college experience, and JCPS initially agreed to implement his IEP while he attended

---

[1] The Complaint asserts that Jack has been diagnosed with the following medical conditions and deficits: microcephaly, autism, written expression disorder, auditory processing disorder, attention deficit hyperactivity disorder, hypotonia, Tourette's Syndrome, growth hormone disorder, colorblindness, dysgraphia, and executive processing disorder.   (Compl. ¶ 10).

the Craft Academy.  (Compl. ¶¶ 23, 28).  The Complaint asserts, shortly thereafter, the KDE directed JCPS not to implement the IEP while Jack attended the Craft Academy.  (Compl. ¶¶ 1, 28).  Additionally, MSU refused to implement the IEP while Jack attended the Craft Academy.  (Compl. ¶¶ 1, 29).  As a result, Daniel and Judith Bradley were allegedly forced to provide for the special education and related services called for in Jack's IEP at their own cost.  (Compl. ¶ 1).

The Complaint also contends that Daniel and Judith Bradley sought relief by utilizing the IDEA's dispute resolution procedures and requested a due process hearing.  (Compl. ¶¶ 1, 6, 33-34).  The due process hearing officer reportedly dismissed their claims against JCPS, KDE, and MSU without conducting a due process hearing.  (Compl. ¶¶ 1, 35).  On appeal, the Exceptional Children Appeals Board ("ECAB") upheld in part and reversed in part the hearing officer's decision.  (Compl. ¶¶ 1, 36, 37).  The Bradleys seek a *de novo* review of these decisions and their rights.  (Compl. ¶¶ 1, 49-50).  Additionally, the Bradleys request an award of damages under 42 U.S.C. § 1983 for injuries they sustained as a result of violations of their constitutional, and statutory rights.  (Compl. 11-12).

### B.  Procedural History

The Bradleys filed this lawsuit claiming denial of FAPE and procedural protections under IDEA (20 U.S.C. § 1400, *et seq.*), as well as violations of the due process clause of the Fourteenth Amendment of the United States Constitution, Section 504 of the Rehabilitation Act (29 U.S.C. § 794), the Americans with Disabilities Act (42 U.S.C. § 12132), and 42 U.S.C. § 1983.  (Compl. ¶¶ 1-64).  KDE and MSU separately moved under Fed. R. Civ. P. 12(b)(6) to dismiss the Bradleys' claims for failure to state a claim upon which relief can be granted.  This matter has been fully briefed and is ripe for decision.

## II.     JURISDICTION

The Court has federal question jurisdiction over this matter.  *See* 28 U.S.C. §§ 1331, 1343, 2201, and 2202; 20 U.S.C. § 1415(i)(3)(A); 42 U.S.C § 1983.

## III.     STANDARD OF REVIEW

### A.     Dismissal Pursuant to Rule 12(b)(6)

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This "plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations omitted).

When considering a defendant's motion to dismiss, the Court will "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]." *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted) (citation omitted).  Thus, to survive a 12(b)(6) motion, "[the] complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,'

4

and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Twombly*, 550 U.S. at 570). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B.**   **Consideration of Documents Not Attached to the Complaint**

Generally, courts may not consider matters outside the pleadings in reviewing a Rule 12(b)(6) motion to dismiss except when the motion is treated as a motion for summary judgment under Rule 56. *Stein v. HHGregg, Inc.*, 873 F.3d 523, 528 (6th Cir. 2017) (citing *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)); *see* Fed. R. Civ. P. 12(d).  As the Sixth Circuit has noted, however:

> [A] court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment."

*Gavitt*, 835 F.3d at 640 (citations omitted).

The parties have filed numerous exhibits pertaining to the pending motions, some of which can and cannot be considered:

1.   Attached as an exhibit to MSU's motion to dismiss is a copy of the Final Decision and Order of the Exceptional Children Appeals Board, which is attached to the Complaint, referred to in the Complaint, and central to the claims contained in the Complaint.   (Compl. ¶¶ 1, 36-48; MSU's Mot. Dismiss Ex. B, at 1-17, DN 12-2). Accordingly, the Court may consider Exhibit B without converting KDE's and MSU's motions to dismiss to motions for summary judgment.   *See Gavitt*, 835 F.3d at 640 (citations omitted).

2.     The Bradleys, in response to the Rule 12(b)(6) motions, have submitted the following exhibits: an unofficial copy of an April 15, 2014, Kentucky State Senate Resolution declaring Craft Academy, *inter alia*, is a residential high school program; Jack's Craft Academy High School Transcript; and an October 18, 2019, News Release from MSU referring to Craft Academy as a residential high school for gifted and talented students.  (Pls.' Resp. Defs.' Mot. Dismiss 2, DN 17 [hereinafter Pls.' Resp.] (citing Pls.' Resp. Defs.' Mot. Dismiss Ex. A, at 5-7, Ex. B, at 8-10, Ex. C, at 11-13)).  The Bradleys' exhibits are not attached to the Complaint.  Further, the Bradley's exhibits are not referred to in the Complaint and are not central to the claims contained therein.  Therefore, the Court declines to consider these exhibits when reviewing KRE's and MSU's motions to dismiss.

3.     KDE and MSU have attached as exhibits to their respective motions to dismiss, a copy of a United States Department of Education ("USDOE") Question and Answers document dated September 17, 2019 ("Q&A"), with an accompanying appendix, titled "Increasing Postsecondary Opportunities and Success for Students and Youth with Disabilities."  (KDE's Mot. Dismiss Ex. 1-16, DN 10-2; MSU's Mot. Dismiss Ex. C, at 1-17, DN 12-3).  Courts may take judicial notice of information posted on official public websites of government agencies in addressing a Rule 12(b)(6) motion to dismiss.  *See Moghaddam v. Pompeo*, 424 F. Supp. 3d 104, 112, 118-19 n.4 (D.D.C. 2020); *Murphy v. U.S. Forest Serv.*, No. 2:13-CV-02315-GEB-AC, 2015 WL 1499004, at *1 (E.D. Cal. Mar. 31, 2015).  The Q&A is a "policy support document" prepared by the USDOE's Office of Special Education Programs ("OSEP")[2] and it is posted on the USDOE's official public

---

[2] https://sites.ed.gov/idea/policy-letters-policy-support-documents/

website.[3] Thus, the Court may take judicial notice of this information in addressing KDE's and MSU's motions to dismiss.

4.      MSU has attached as an exhibit to its motion to dismiss, a copy of a May 30, 2019, decision by the USDOE Office For Civil Rights ("OCR") in the matter of Colorado Early Colleges – Fort Collins OCR Case No. 08-19-1158.  (MSU's Mot. Dismiss Ex. D, 1-5, DN 12-4).  This document is not posted on the USDOE OCR official public website.  Additionally, this exhibit is not attached to the Complaint, it is not referred to in the Complaint, and it is not central to the claims contained in the Complaint.  For these reasons, the Court declines to consider this information in addressing KDE's and MSU's motions to dismiss.

5.      MSU has attached as an exhibit to its motion to dismiss, a copy of a letter dated May 15, 2017, from the KDE to the Office of the Attorney General of Kentucky responding to a request for input concerning whether Part B of the IDEA must be implemented at Gatton Academy at Western Kentucky University ("Gatton Academy") and Craft Academy.  (MSU's Mot. Dismiss Ex. A, at 1-6, DN 12-1).  This document is not posted on the KDE official public website.  Additionally, this exhibit is not attached to the Complaint, it is not referred to in the Complaint, and it is not central to the claims contained in the Complaint.  Therefore, the Court declines to consider this exhibit when reviewing KRE's and MSU's motions to dismiss.

6.      MSU has attached as an exhibit to its motion to dismiss an Opinion of the Attorney General of Kentucky dated September 22, 2017 ("OAG 17-021") which is posted

---

[3] https://sites.ed.gov/idea/idea-files/qa-increasing-postsecondary-opportunities-success-for-students-youth-with-disabilities-sept-17-2019/#Q1

on the Attorney General's official public website.[4]  (MSU's Mot. Dismiss Ex. E, 1-5, DN

12-5).  The Court may consider OAG 17-021 and assess the persuasiveness of this

nonbinding opinion without converting KDE's and MSU's motions to ones for summary

judgment.  *See Williams v. Lasik Inst., LLC*, No. 2:20-CV-02402-JPM-tmp, 2021 WL

4482968, at *6 (W.D. Tenn. Sept. 29, 2021) (In addressing a Rule 12(b)(6) motion, the

district court acknowledged that opinions of the Tennessee Attorney General are not

binding but are entitled to deference.); *Marsilio v. Vigluicci*, 924 F. Supp. 2d 837, 864-65

(N.D. Ohio 2013) (while considering a Rule 12(b)(6) motion, the district court found an

Ohio Attorney General Opinion instructive and persuasive); *Garner v. Bowling Green

Metalforming L.L.C.*, No. 1:21-CV-00135, 2012 WL 5866452, at *2-3 (W.D. Ky. Nov. 19,

2012) (noting that in addressing a Rule 12(b)(6) motion, the district court noted while

Kentucky Attorney General Opinions are not binding authority on Kentucky law, they are

persuasive); *see also Eriksen v. Gruner & Simms, PLLC*, 400 S.W.3d 290, 293 (Ky. App.

2013) ("While not binding on the courts, opinions of the Attorney General are generally

persuasive.").

       7.     Finally, the Bradleys have recently filed a Notice of Supplemental Guidance

with an attached copy of a January 26, 2022, letter, from Valerie C. Williams ("Williams"),

USDOE's Director of OSEP, to Judith L. Bradley, Jr., Managing Partner & Idea Architect,

with JackBeNimble, Inc.  (Pls.' Notice 1-6, DN 36; Pls.' Notice Ex. 1, at 1-2, DN 36-1).

Williams indicates "[i]f under State law, attending classes at a postsecondary institution,

whether auditing or for credit, is considered secondary school education for students in

grade 12 or below and the education provided meets applicable State standards, those

---

[4] https://www.ag.ky.gov/Resources/Opinions/Pages/Opinions.aspx

services can be designated as transition services on a student's IEP and paid for with IDEA Part B funds consistent with the student's entitlement to FAPE."  (Pls.' Notice Ex. 1, at 2) (citation cleaned up).  This correspondence from Williams is not a "policy letter" posted on the USDOE's official public website.[5]  Additionally, this correspondence is not attached to the Complaint, it is not referred to in the Complaint, and it is not central to the claims contained in the Complaint.  Consequently, the Court will not take judicial notice of this information nor consider it when reviewing MSU's and KDE's motions to dismiss.

## IV.   DISCUSSION

### A.   Applicability of the IDEA (Counts A and D)

KDE and MSU have separately moved to dismiss Counts A and D in the Complaint for failure to state a claim upon which relief can be granted because:  (1) as a matter of law, the IDEA does not apply to Craft Academy's postsecondary courses and programs; and (2) the JCPS ARC did not determine that the courses offered by Craft Academy were necessary to provide Jack with a FAPE.  (KDE's Mot. Dismiss 1-6, DN 10 [hereinafter KDE's Mot.]; MSU's Mot. Dismiss 7-8, DN 12 [hereinafter MSU's Mot.]).  In response, the Bradleys argue the IDEA applies to Craft Academy because it is a residential high school.  (Pls.' Resp. 2-3).  The parties agree the applicability of the IDEA depends on whether Craft Academy provides a secondary school education.  (KDE's Mot. 1-6; MSU's Mot. 7-8; Pls.' Resp. 2-3).

#### 1.   *Applicable Law*

The IDEA "ensures that children with disabilities receive needed special education services." *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017); 20 U.S.C. § 1400, *et seq.*  The

---

[5] https://sites.ed.gov/idea/policy-guidance/

IDEA offers federal funds to states in exchange for their commitment to furnish a FAPE to all children between the ages of 3 and 21 with certain physical or intellectual disabilities. *Fry*, 137 S. Ct. at 748; 20 U.S.C. §§ 1412(a)(1)(A), 1401(3)(A)(i) (listing covered disabilities); 34 C.F.R §§ 300.101(a), (b). A FAPE provides such children with "special education and related services" which includes "instruction" personalized to meet each child's "unique needs" and adequate "supportive services" to permit the child to benefit from the instruction. *Fry*, 137 S. Ct. at 748-49 (citing 20 U.S.C. §§ 1401(9), (26), (29); *Bd. of Ed. of Hendrick Hudson Ctr. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203 (1982)).

Under the IDEA, an IEP serves as the "primary vehicle" for providing each eligible child with the promised FAPE. *Id.* at 749 (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988); 20 U.S.C. § 1414(d)). An IEP is fashioned by a child's "IEP Team"—a group of school officials, teachers, and parents—and describes a personalized plan to meet all of the child's "measurable annual goals" for how he or she can "make progress in the general education curriculum," and it identifies the "special education and related services" and supplementary aids and services that will be furnished so the child can "advance appropriately toward [the annual] goals." *Id.* (citing 20 U.S.C. § 1414(d)(1)(A)(i)(II)(bb), (d)(1)(B)). Further, the IEP documents the child's current "levels of academic achievement," identifies "measurable annual goals" for how the child can "make progress in the general education curriculum," and specifies the "special education related services" to be provided so that he or she can "advance appropriately toward [those] goals." *Id.* (alteration in original) (citing 20 U.S.C. §§ 1414(d)(1)(A)(i)(I), (II), (IV)(aa)).

A state's eligibility for financial assistance under the IDEA is contingent upon the State submitting a plan which provides assurances to the United States Secretary of Education that the State has in effect policies and procedures to ensure a FAPE is provided to all children with

disabilities residing within the state between the ages of 3 and 21.  20 U.S.C. § 1412(a)(1)(A).  A

local educational agency's ("LEA") entitlement to financial assistance under the IDEA is

dependent upon the LEA submitting a plan providing assurance to the state educational agency

("SEA") that the LEA has in effect policies, procedures, and programs that are consistent with the

state policies and procedures established under Section 1412.  20 C.F.R. § 1413(a)(1).  An LEA is

a public board of education within a State that has administrative control of public elementary and

secondary schools in a city, county, school district, or other political subdivision of a State.  20

U.S.C. § 1401(19)(A); 34 C.F.R. § 300.28(a).  A SEA is a State board of education or other agency

primarily responsible for the State supervision of public elementary and secondary schools.  20

U.S.C. § 1401(32); 34 C.F.R. § 300.41.

### 2.   *Statutory and Regulatory Limitations on FAPE*

Under the IDEA, the term FAPE, *inter alia*, is defined as follows:

> The term "free appropriate public education" means ***special education and related services*** that—
> (A)   have been provided at public expense, under public supervision and direction, and without charge;
> (B)   meet the standards of the State educational agency;
> (C)   include an appropriate preschool, elementary school, or ***secondary school education in the State involved***; and
> (D)   are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9) (emphasis added); *see also* 34 C.F.R. § 300.17(C).  "The term 'Secondary

school' means a nonprofit institutional day or residential school, including a public secondary

charter school that provides ***secondary education***, ***as determined under State law***, ***except that it***

***does not include any education beyond grade 12***."  20 U.S.C. § 1401(27) (emphasis added); *see*

*also* 34 C.F.R. § 300.36.  While the language "***as determined under State law***" provides states

with discretion in how "***secondary education***" is defined, the admonition "***except that it does not***

*include any education beyond grade 12*" imposes an emphatic ceiling on the term's meaning.  *See* 20 U.S.C. § 1401(27) (emphasis added).  From these statutory and regulatory definitions, it is clear the obligation under IDEA to make FAPE available to all children with disabilities between the ages of 3 and 21 does not apply with respect to postsecondary education.  Additionally, these statutory and regulatory definitions indicate the Court must look to Kentucky law for guidance in determining whether Craft Academy provides a secondary education.

### 3. *Availability of FAPE in Dual Credit Programs*

As referenced above, the USDOE issued the Q&A on September 17, 2019, which is a "policy support document" prepared by the USDOE's OSEP[6] and posted on the USDOE's official public website.  U.S. Dep't of Educ., *Increasing Postsecondary Opportunities and Success for Students and Youth With Disabilities* 1-15 (Sept. 17, 2019) [hereinafter Q&A].[7]  The Q&A, *inter alia*, provides written guidance concerning dual enrollment situations where high school students with disabilities—receiving services under the IDEA pursuant to an IEP—take courses offered by postsecondary education institutions prior to graduation from high school.  *Id.*; *see* 20 U.S.C. § 1406(e) (the Secretary of the USDOE may provide informal written guidance that is not legally binding).

The Q&A indicates that the term "postsecondary education" means education or training provided by "institutions of higher education" which includes colleges and universities.  Q&A 1.[8]  It explains, because FAPE under IDEA Part B does not include postsecondary education, IDEA Part B funds can only be utilized—to pay for services that constitute FAPE—in dual enrollment

---

[6] https://sites.ed.gov/idea/policy-letters-policy-support-documents/
[7] https://sites.ed.gov/idea/idea-files/qa-increasing-postsecondary-opportunities-success-for-students-youth-with-disabilities-sept-17-2019/#Q1
[8] This is consistent with the IDEA's definition of "Institutions of Higher Education."  *See* 20 U.S.C. §§ 1001(a)-(b), 1401(17)(A).

programs that involve postsecondary education settings when the following conditions are satisfied: (1) "the education provided is considered secondary school education in the State[;]" and (2) "the student's IEP team must determine that the courses offered as part of [the] dual enrollment program are necessary to provide the student with FAPE." *Id.* at 4.

The Q&A also points out that the statutory and regulatory definitions of "secondary school" include language—"as determined under State law"—which provides States with the "flexibility to interpret how 'secondary school' education is defined and would apply to dual enrollment programs in their State." *Id.* at 9 (quoting 20 U.S.C. § 1401(27), 34 C.F.R. § 300.36). Thus, the Q&A directs—and the parties concur—that the Court must look to Kentucky law for guidance on the question of whether the education provided at Craft Academy is considered secondary or postsecondary education.[9]

### 4.   *The Education Provided by Craft Academy*

The parties find support for their divergent positions in KRS Chapter 164, which is titled "State Universities and Colleges; Regional Education; Archaeology." KDE and MSU rely on the definitions of "dual credit" and "dual enrollment" in KRS 164.002(5) and (6) to contend that Craft Academy is a postsecondary school and the education it provides is considered a postsecondary education by Kentucky. (KDE's Mot. 1-6, DN 10; MSU's Mot. 7-8, DN 12). By contrast, the Bradleys depend on a definition in KRS 164.7874(11) to argue Craft Academy is a residential high school. (Pls.' Resp. 2-3).

---

[9] KDE and MSU rely on the Q&A and have included it as an exhibit in support of their respective motions to dismiss. (KDE's Mot. 2-5; MSU's Mot. 8 (citing KDE's Mot. Dismiss Ex. A, at 3, 5-6, 11, DN 10-2; MSU's Mot. Dismiss Ex. C, at 5-6, DN 12-3)). The Bradleys have not objected to the Q&A or KDE's and MSU's reliance on the Q&A in their arguments. (Pls.' Resp. 1-3). Additionally, the Bradleys' position—that Craft Academy is a residential high school under KRS 164.7874(11)—appears to rely on the guidance in Q&A. (Pls.' Resp. 2-3).

MSU is a "comprehensive university" in the Commonwealth's "postsecondary education system" that is governed by a board of regents.  *See* KRS 164.001(7), (17); KRS 164.321(1); 164.350(1); 164.365.  Craft Academy is located at MSU and is funded from MSU's budget through state appropriations.  *See* KRS app. A, pt. 1; 2021 Ky. Acts 169 (State/Executive Branch Budget effective June 29, 2021).

KRS 164.002 defines terms within Chapter 164, "unless the context requires otherwise . . . ."  More specifically, it provides the following definitions:

> (5)     "*Dual credit*" means a *college-level course of study* developed in accordance with KRS 164.098 in which a *high school student* receives credit *from both the high school and postsecondary institution* in which the student is enrolled upon completion of a single class or designated program of study, *including participating in* the Gatton Academy of Mathematics and Science in Kentucky or the *Craft Academy* for Excellence in Science and Mathematics; [and]
> (6)     "*Dual enrollment*" means a *college-level course of study* developed in accordance with KRS 164.098 in which a *student is enrolled in a high school and postsecondary institution simultaneously*, including participating in the Gatton Academy of Mathematics and Science in Kentucky or the *Craft Academy* for Excellence in Science and Mathematics . . . .

KRS 164.002(5)-(6) (emphasis added).[10]  Both of these statutory definitions expressly indicate that the Gatton Academy and Craft Academy are postsecondary institutions which provide high school students with a college-level course of study.[11]

_____

[10] *Inter alia*, KRS 164.098 states "[t]he Council on Postsecondary Education, in conjunction with the Kentucky Board of Education and the Education Professional Standards Board, shall develop guidelines for content knowledge and teacher training in dual enrollment and dual credit programs offered in Kentucky."  KRS 164.098(3).

[11] Consistent with this conclusion, KRS 158.140(3)(c) directs "[t]he respective academy [Gatton or Craft] and the [student's] home school district shall ensure that student transcripts from each institution accurately reflect the dual credit coursework."  Additionally, KRS 158.140 provides Gatton Academy and Craft Academy with the discretion to award an academy diploma "to any student who completes his or her high school program at the respective academy[ ]" on the condition that "the board of regents of the host university shall provide to the commissioner of education a letter of assurance that the program of study completed by its students, in combination with *previously earned secondary credits*, meets the minimum high school graduation

Chapter 158 pertains to primary, elementary, and secondary education and is titled "Conduct of Schools; Special Programs."  Terms that apply to Chapter 158 are defined in KRS 158.007, "unless the context requires otherwise . . . ."  More specifically, it provides the following definitions:

> (8)    "***Dual credit***" means a ***college-level course of study*** developed in accordance with KRS 164.098 in which a ***high school student*** receives credit ***from both the high school and postsecondary institution*** in which the student is enrolled upon completion of a single class or designated program of study.
>
> (9)    "***Dual enrollment***" means a ***college-level course of study*** developed in accordance with KRS 164.098 in which a ***student is enrolled in a high school and postsecondary institution simultaneously***.

KRS 158.007(8)-(9) (emphasis added).  Both statutory definitions expressly indicate the postsecondary institutions provide high school students with what is considered a college or postsecondary education in Kentucky.  These definitions are congruous with the definitions in KRS 164.002(5) and (6) discussed above.

KRS Chapter 157 pertains to primary, elementary, and secondary education and is titled "State Support of Education."  Within the "Fund to Support Education Excellence in Kentucky" section of Chapter 157, KRS 157.320 defines terms "[a]s used in KRS 157.310 to 157.440, unless the context otherwise requires . . .. "  Included within this statute is the following definition: "'Secondary school' means a school consisting of grades seven (7) through twelve (12), or any appropriate combination of grades within this range as determined by the plan of organization for schools authorized by the [school] district board."  KRS 157.320(11).  Consistent with the definition of "secondary school" in 20 U.S.C. § 1401(27) and 34 C.F.R. § 300.36, KRS 157.320(11) indicates a secondary education does not include any education beyond grade 12.

---

requirements established by the Kentucky Board of Education under KRS 156.160(1)(d)."  KRS 158.140(3)(a) (emphasis added).

As mentioned above, the Bradleys depend on the definition of "high school" in KRS 164.7874(11).  Notably, KRS 164.7874 defines terms "[a]s used in KRS 164.7871 to 164.7885" within the "Higher Education Assistance" section of Chapter 164.  These statutes concern a college scholarship program funded by Kentucky Lottery revenues pursuant to KRS 154A.130(3) and (4).  *See* KRS 164.7871-.7885.  The following definitions are included in KRS 164.7874:

(7)   "Eligible high school student" means any person who:
    (a)   Is a citizen, national, or permanent resident of the United States and Kentucky resident;
    (b)   Was enrolled after July 1, 1998:
        1.   In a Kentucky high school for at least one hundred forty (140) days of the minimum school term unless exempted by the authority's executive director upon documentation of extreme hardship, while meeting the KEES curriculum requirements, and was enrolled in a Kentucky high school at the end of the academic year;
        2.   In a Kentucky high school for the fall academic term of the senior year and who:
            a.   Was enrolled during the entire academic term;
            b.   Completed the high school's graduation requirements during the fall academic term; and
            c.   Was not enrolled in a secondary school during any other academic term of that academic year; or
        3.   In the Gatton Academy of Mathematics and Science in Kentucky, the Craft Academy for Excellence in Science and Mathematics, or in high school at a model and practice school under KRS 164.380 while meeting the Kentucky educational excellence scholarship curriculum requirements;
    (c)   Has a grade point average of 2.5 or above at the end of any academic year beginning after July 1, 1998, or at the end of the fall academic term for a student eligible under paragraph (b) 2. of this subsection; and
    (d)   Is not a convicted felon;
(8)   "Eligible postsecondary student" means a citizen, national, or permanent resident of the United States and Kentucky resident, as determined by the participating institution in accordance with criteria established by the council for the purposes of admission and tuition assessment, who:
    (a)   Earned a KEES award;
    (b)   Has the required postsecondary GPA and credit hours required under KRS 164.7881;
    (c)   Has remaining semesters of eligibility under KRS 164.7881;

        (d)      Is enrolled in a participating institution as a part-time or full-time student; and

        (e)      Is not a convicted felon;

. . .

(11)    "High school" means any Kentucky public high school, the Gatton Academy of Mathematics and Science in Kentucky, the Craft Academy for Excellence in Science and Mathematics, a high school of a model and practice school under KRS 164.380, and any private, parochial, or church school located in Kentucky that has been certified by the Kentucky Board of Education as voluntarily complying with curriculum, certification, and textbook standards established by the Kentucky Board of Education under KRS 156.160;

(12)    "KEES" or "Kentucky educational excellence scholarship" means a scholarship provided under KRS 164.7871 to 164.7885 . . . .

KRS 164.7874(7)(b)(3), (8)(a)-(e), (11)-(12).  These section-specific definitions, when read in conjunction with KRS 164.7871 to 164.7885, merely ensure that high school students, including those enrolled at Gatton Academy and Craft Academy, qualify for KEES scholarship and supplemental awards which, upon graduation from high school, may be used to pursue an undergraduate college degree or other postsecondary program at a participating institution.

The Bradleys, and the Opinion of the Attorney General of Kentucky, rely on these section specific definitions in KRS 164.7874 to substantiate the position that the General Assembly has indicated Gatton Academy and Craft Academy are secondary schools and the students who attend them receive a secondary education.  (Pls.' Resp. 2-3); *see* 2017 Ky. Op. Att'y Gen., OAG 17-021, at 3-4.  While the Attorney General's Opinion briefly mentions KRS 164.002(5) and (6), it patently ignores the statutory language indicating unambiguously that Gatton Academy and Craft Academy provide high school students—enrolled in their dual credit and dual enrollment programs—with what is considered a college or postsecondary education in Kentucky.  *See* 2017 Ky. Op. Att'y Gen., OAG 17-021, at 3-4.  By turning the proverbial blind eye to this statutory language in KRS 164.002(5) and (6), the Attorney General's Opinion has circumvented an insurmountable task of demonstrating the Kentucky General Assembly intended these section

17

specific definitions in KRS 164.7874(7), (8), and (11) to supersede or supplant the statutory definitions set forth in KRS 164.002(5) and (6) and the congruent definitions in KRS 158.007(8) and (9). Further, the Opinion's reasoning is inconsistent with the Q&A, which the USDOE issued two years later. For these reasons, the Court will not give any deference to the Attorney General's Opinion. *See Northland Fam. Planning Clinic, Inc. v. Cox*, 487 F.3d 323, 338 (6th Cir. 2007) (district court correctly rejected deferring to Michigan Attorney General's Opinion interpreting a state statute because it was not binding on the state's courts and it irreconcilably conflicted with the statutory language). More importantly, these section specific definitions in KRS 164.7874 do not support the Bradleys' argument that Gatton Academy and Craft Academy provide what is considered a secondary school education in Kentucky.

In sum, the clear and unambiguous language in KRS 164.002(5) and (6) indicates Craft Academy is a postsecondary institution that provides high school students enrolled in its dual credit and dual enrollment program with what Kentucky defines as college-level, not secondary-level, courses. This means, as a matter of law, the obligation under IDEA to make FAPE available to Jack does not apply to the postsecondary education he received at Craft Academy.[12]

For the reasons set forth above, Counts A and D of the Complaint cannot survive a Rule 12(b)(6) motion as they fail to state claims upon which relief can be granted.[13]

---

[12] The Court also observes that the Bradleys failed to respond to KDE's and MSU's claim that the JCPS ARC did not determine the courses offered as part of the Craft Academy program were necessary to provide Jack with a FAPE. (KDE's Mot. 5-6; MSU's Mot. 7-9; Pls.' Resp. 2-3). KDE's and MSU's claim has been rendered moot by the determination that the obligation under IDEA to make FAPE available to Jack does not apply to his postsecondary classes at Craft Academy.

[13] Alternatively, KDE claims the Bradleys' IDEA claims should be dismissed as moot because they cannot seek injunctive relief as Jack has graduated from high school and IDEA does not permit an award of compensatory damages. (KDE's Mot. 6). KDE's claim is rendered moot by the above determination that the obligation under IDEA to make FAPE available to Jack does not apply to the postsecondary education he received at Craft Academy.

**B.**    <u>Due Process Claim (Count B)</u>

KDE and MSU assert the due process claim in Count B of the Complaint should be dismissed, and the Bradleys have not responded. (KDE's Mot. 6; MSU's Mot. 11; Pls.' Resp. 1-3). As the Bradleys have not offered any argument in support of their due process claim, they are deemed to have conceded the issue and abandoned their claim as to KDE and MSU. *See Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007) (affirming district court's conclusion that plaintiff abandoned certain claims by failing to raise them in his brief opposing the motion to dismiss); *Meredith v. Allen Cnty. War Mem'l Hosp. Comm'n*, 397 F.2d 33, 34 n.2 (6th Cir. 1968) ("Plaintiff also alleged in his complaint that jurisdiction existed under the antitrust laws, but this allegation was not advanced either in opposition [to] defendants' motion to dismiss or on appeal, and we therefore assume that the claim of antitrust violation has been abandoned."); *Mekani v. Homecomings Fin., LLC*, 752 F. Supp. 2d 785, 797 (E.D. Mich. 2010) (noting that where a plaintiff fails to respond to an argument in a motion to dismiss, it may be assumed that he concedes this point and abandons the claim).

Moreover, the Bradleys' due process claim merely incorporates by reference all the averments in the preceding paragraphs and asserts, "[t]he Defendants actions have deprived Plaintiffs of their Constitutional, statutory and regulatory rights and privileges afforded to them." (Compl. ¶ 53). The Court finds this general assertion insufficient to survive a Rule 12(b)(6) motion. *See Iqbal*, 556 U.S. at 678.

Relatedly, in their response to the motions to dismiss filed by KDE and MSU, the Bradleys have asserted that the Court cannot dismiss their action at this stage in the proceeding because they have requested "a review of the Hearing Officer and Exceptional Children Appeals Board's Final Rulings in accordance with 20 U.S.C. § 1415(i)(2)(A)." (Pls.' Resp. 1-2 (citing 20 U.S.C. §

1415(i)(2)(A) and (C))).[14]   KDE and MSU reply that while the Bradleys may have the statutory right to bring this action, it does not follow that they have an automatic right to proceed with the action, especially when, as here, the Bradleys have failed to state an IDEA claim against KDE and MSU.  (MSU's Reply Mot. Dismiss 1-2, DN 18; KDE's Reply Mot. Dismiss 1-2, DN 19).  The Court agrees with KDE and MSU.

Certainly, 20 U.S.C. § 1415(i)(2)(A) indicates that those who are unhappy with the outcome of the administrative process may seek judicial review by filing a civil action.  *See Fry*, 137 S. Ct. at 749.  Further, 20 U.S.C. § 1415(i)(2)(C) sets forth certain requirements that apply to federal court review of the administrative findings and decision.  The Bradleys have not, however, cited any authority in support of their position concerning dismissal.  To the contrary, dismissal of a Section 1415(i)(2)(C) action under Rule 12(b)(6) is appropriate when, as here, the complaint fails to state a claim upon which relief can be granted.  *See, e.g.*, *M.C. v. Knox Cnty. Bd. of Educ.*, No. 3:17-CV-337, 2018 WL 2746014, at *5-10 (E.D. Tenn. June 7, 2018) (district court granted Rule 12(b)(6) motion because plaintiffs' claims under IDEA failed to state a claim upon which relief can be granted); *Gibson v. Forest Hills Loc. Sch. Dist., Bd. of Educ.*, No. 1:11-CV-329, 2012 WL 1197896, at *3-6 (S.D. Ohio Apr. 10, 2012) (district court granted Rule 12(b)(6) motion as plaintiff failed to exhaust administrative remedies); *J.R. v. Cox-Cruey*, No. 14-149-DLB-JGW, 2015 WL 4080052, at *5 (E.D. Ky. July 6, 2015) (district court granted Rule 12(b)(1) and 12(b)(6) motion because plaintiff's appeal to the Exceptional Children Appeals Board was untimely); *cf. I.L. v. Knox Cnty. Bd. of Educ.*, 257 F. Supp. 3d 946, 957, 960-64 (E.D. Tenn. 2017) (district court

---

[14] According to the Bradleys, the IDEA statute and due process require that the Court conduct a judicial review of the entire record below and hear the Bradleys' additional evidence, and after these steps have been exhausted the Court may then grant relief it deems appropriate.  (Pls.' Resp. 1-2 (citing 20 U.S.C. § 1415(i)(2)(A) and (C))).

granted Rule 12(b)(6) motion as to the IDEA grievance-procedure interference claim but denied it as to the IDEA—Supports Act claim), *aff'd on other grounds*, 739 F. App'x 319 (6th Cir. 2018) (affirmed district court's ruling on the complaint-resolution-procedure under the summary judgment standard because each side presented evidence that did not appear in the pleadings). Thus, dismissal of the Bradleys' IDEA claims in Counts A and D of the Complaint does not result in a violation of their statutory or due process rights.

For the reasons set forth above, Count B of the Complaint cannot survive a Rule 12(b)(6) motion as it fails to state claims upon which relief can be granted.

### C.    ADA and Section 504 (Counts C and D)

KDE asserts, "To the extent the Plaintiffs are asserting allegations concerning disability-based discrimination claims unrelated to the application of IDEA, such claims would not be applicable against KDE." (KDE's Mot. 6). MSU argues the Bradleys must allege something in addition to the denial of FAPE to survive a legal challenge to their ADA and Section 504 claims. (MSU's Mot. 12). Again, the Bradleys have not responded to these arguments. (Pls.' Resp. 1-3).

As the Bradleys have not offered any argument in support of their ADA and Section 504 claims, they have conceded the issue and abandoned those claims as to KDE and MSU. *See Doe*, 507 F.3d at 1007-08 (affirming district court's conclusion that plaintiff abandoned certain claims by failing to raise them in his brief opposing the motion to dismiss); *Meredith*, 397 F.2d at 34 n.2 ("Plaintiff also alleged in his complaint that jurisdiction existed under the antitrust laws, but this allegation was not advanced either in opposition [to] defendants' motion to dismiss or on appeal, and we therefore assume that the claim of antitrust violation has been abandoned."); *Mekani*, 752 F. Supp. 2d at 797 (noting that where a plaintiff fails to respond to an argument in a motion to dismiss, it may be assumed that he concedes this point and abandons the claim).

Additionally, as the Bradleys' ADA and Section 504 claims are based on the alleged denial of FAPE, they must be dismissed because the Court has already concluded an identical claim under the IDEA should be dismissed under Rule 12(b)(6).  (*See* Compl. ¶¶ 54-64); *see N.L. ex rel. Mrs. C. v. Knox Cnty. Schs.*, 315 F.3d 688, 695-96 (6th Cir. 2003); *M.C.*, 2018 WL 2746014, at *9; *I.L.*, 257 F. Supp. 3d at 974.

For the reasons set forth above, Counts C and D of the Complaint cannot survive a Rule 12(b)(6) motion as they fail to state claims upon which relief can be granted.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss (DN 10, 12) are **GRANTED**, and Plaintiffs' claims against Defendants Kentucky Department of Education and Morehead State University are **DISMISSED**.

Greg N. Stivers, Chief Judge

United States District Court

April 18, 2022

cc:      counsel of record