## UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Kelly L. Stephens
Clerk

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed:  December 21, 2023

Mr. Todd G. Allen
Kentucky Department Of Education
300 Sower Boulevard
Fifth Floor
Frankfort, KY 40601

Ms. Marianne S. Chevalier
Chevalier & Kruer
2216 Dixie Highway, Suite 202
Ft. Mitchell, KY 41017

Ms. Dana Lucas Collins
Jefferson County Public Schools
3332 Newburg Road
Louisville, KY 40218

Ms. Amy Elizabeth Halbrook
Chase College of Law
545 Nunn Hall
Highland Heights, KY 41099

Mr. Byron E. Leet
Wyatt, Tarrant & Combs
400 W. Market Street
Suite 2000
Louisville, KY 40202

Mr. Steven Patrick Riley
Mr. Joshua M. Salsburey
Sturgill, Turner, Barker & Moloney
333 W. Vine Street, Suite 1500
Lexington, KY 40502

Ms. Jessica R. Stigall
Morehead State University
Office of General Counsel
150 University Boulevard, Suite 305
Morehead, KY 40351

Mr. Thomas Edwin Joseph Travis
Wyatt, Tarrant & Combs
250 W. Main Street
Suite 1600
Lexington, KY 40507

Re:  Case No. 22-6091, *Jacob Bradley, et al v. Jefferson Co KY Public Schools, et al*
Originating Case No. : 3:20-cv-00450

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Kelly L. Stephens, Clerk

Cathryn Lovely
Deputy Clerk

cc:  Mr. James J. Vilt Jr.

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0276p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

---

JACOB BRADLEY aka Jack Bradley; DANIEL BRADLEY;
JUDITH BRADLEY,

*Plaintiffs-Appellants,*

*v.*

JEFFERSON COUNTY PUBLIC SCHOOLS; KENTUCKY
DEPARTMENT OF EDUCATION; MOREHEAD STATE
UNIVERSITY,

*Defendants-Appellees.*

No. 22-6091

---

Appeal from the United States District Court for the Western District of Kentucky at Louisville.
No. 3:20-cv-00450—Gregory N. Stivers, District Judge.

Decided and Filed:  December 21, 2023

Before:  SUTTON, Chief Judge; WHITE and BUSH, Circuit Judges.

---

### COUNSEL

**ON BRIEF:**  Marianne S. Chevalier, CHEVALIER & KRUER, P.S.C., Ft. Mitchell, Kentucky, Sonja D. Kerr, CONNELL MICHAEL KERR, LLP, Austin, Texas, for Appellants.  Dana L. Collins, JEFFERSON COUNTY PUBLIC SCHOOLS, Louisville, Kentucky, Byron E. Leet, Thomas E. Travis, WYATT, TARRANT & COMBS, LLP, Louisville, Kentucky, for Appellee Jefferson County Public Schools.  Ashley Lant, KENTUCKY DEPARTMENT OF EDUCATION, Frankfort, Kentucky, for Appellee Kentucky Department of Education.  Joshua M. Salsburey, S. Patrick Riley, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, Jessica R. Stigall, MOREHEAD STATE UNIVERSITY, Morehead, Kentucky, for Appellee Morehead State University.  Amy E. Halbrook, CHASE COLLEGE OF LAW, Highland Heights, Kentucky, for Amici Curiae.

SUTTON, C.J., delivered the opinion of the court in which BUSH, J., joined.  WHITE, J. (pp. 13–18), delivered a separate dissenting opinion.

No. 22-6091          *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*          Page 2

————————————

**OPINION**

————————————

SUTTON, Chief Judge.   As a cooperative federalism program, the Individuals with Disabilities Education Act offers federal funds to participating States in return for providing a "free appropriate public education" to students with disabilities in preschool, elementary school, and secondary school.   A high school student and his parents contend that the Act's guarantees extend to students enrolled full time at Kentucky's Craft Academy for Excellence in Science and Mathematics.   Located on the campus of Morehead State University, Craft provides an education in a residential environment with undergraduates and offers classes eligible for high school and college credit.   The district court concluded that the Act does not apply to Craft because the dual-credit classes amounted to a postsecondary rather than secondary school education.   We affirm.

I.

Jack Bradley is an intellectually gifted student with microcephaly, Tourette's Syndrome, autism, and executive processing disorder, among other physical and cognitive conditions. Because Kentucky has accepted federal funding under the Individuals with Disabilities Education Act, the Act requires his home state to provide him with a "free appropriate public education," one that includes any special education and related services he needs to learn in a preschool, elementary, and secondary school environment.   20 U.S.C. § 1412(a)(1)(A). Individualized education plans put these accommodations in writing after a consultation process involving the parents, the relevant teachers and administrators, and sometimes the student.   *Id.* § 1414(d)(1)(A), (B).

Jack first received a plan as a ninth grader.   Under it, he enrolled in Jefferson County Public Schools' magnet program for advanced students and received special education support services along the way.   He took accelerated courses at the high school for three years.   And he completed a dual-credit class at a local university during that time.   These successes convinced Jack's parents and the plan team that he should start focusing on the transition to postsecondary education.   His plan pinpointed "a residential college experience" as one such step.   R.1 at 7.

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 3

Jack's parents hoped that the plan would cover his participation in a state-run residential program outside their school district:  the Craft Academy for Excellence in Science and Mathematics.  A dual-credit, dual-enrollment school for eleventh and twelfth graders, Craft is located at Morehead State University.  Students admitted to the program take courses for free with undergraduates on the Morehead State campus, live in a residence hall there, and receive high school and college credit.

The County initially was open to allowing Jack to attend Craft under his plan.  But the Kentucky Department of Education prevented that option, reasoning that the Act does not apply to full-time students at "postsecondary programs" like Craft who wish to receive any services there as opposed to the high school in which they are enrolled.  R.11-3 at 4.  After the County told the Bradleys that it would not apply his plan at Craft, they proceeded to enroll Jack at Craft anyway and to pay for his support accommodations on their own.  Meanwhile, Jack kept his primary enrollment at Jefferson County's duPont Manual High School even though he was not physically taking classes there.  *See* Ky. Rev. Stat. § 158.140(3)(b).

The Bradleys sought reimbursement for his support accommodations at Craft along with other relief through the Act's dispute resolution procedures.  They sought a hearing under the Act, alleging that the Jefferson County Public Schools, the Kentucky Department of Education, and Morehead State denied Jack a free appropriate public education by not adhering to his plan at Craft.  The hearing officer dismissed their claims.  The Bradleys appealed to the Commonwealth's Exceptional Children Appeals Board, which echoed the hearing officer's determination that the Act did not require Kentucky to provide a free appropriate public education at Craft because it provides a postsecondary, not a secondary, education.

The Bradleys challenged the Board's dismissal in federal court, adding claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.  The district court dismissed the action for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

No. 22-6091          *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*          Page 4

II.

A.

At stake is whether the Individuals with Disabilities Education Act requires Kentucky to cover the costs of support accommodations in dual-credit courses offered at a postsecondary school as part of its agreement to provide a free appropriate public education to students with disabilities in the Commonwealth.

Enacted under Congress's spending power, the Act "offers States federal funds" to help them "in educating children with disabilities." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 390 (2017). If a State accepts the funds, as Kentucky has for more than forty years, *see Age v. Bullitt Cnty. Pub. Schs.*, 673 F.2d 141, 142 (6th Cir. 1982), it must comply with the Act by offering "[a] free appropriate public education . . . to all children with disabilities," 20 U.S.C. § 1412(a)(1)(A). As this arrangement indicates, the Act does not "displace the primacy of States in the field of education" and gives them leeway in determining the content of a free appropriate public education. *Bd. of Educ. Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 208 (1982). The Act offers States "funds to assist them in extending their educational systems to the handicapped" in return for undertaking the obligation to provide a free appropriate public education, *id.*, even if that education falls short of the "[d]esirable goal" of "maximiz[ing] the potential of each handicapped child commensurate with the opportunity provided other children," *id.* at 198. Through it all, the Act requires States to "provide children with disabilities an appropriate education, not the very best possible special education services." *Wise v. Ohio Dep't of Educ.*, 80 F.3d 177, 185 (6th Cir. 1996).

The key undertaking required of participating States is to provide a "free appropriate public education" to disabled students. That duty, the Act explains, requires States to provide "special education and related services" that (1) are "at public expense"; (2) "meet the standards of the State education agency"; (3) "include an appropriate preschool, elementary school, or secondary school education in the State involved"; and (4) "are provided in conformity with the individualized education program" required by the Act. 20 U.S.C. § 1401(9).

Does this obligation extend to full-time classes offered at Craft and other college-level schools in Kentucky?  We think not for several reasons.  *First*, the language of the Act does not support this position.  By its terms, the Act applies to "secondary," not postsecondary, education. *Id.*  Cementing the point are two related provisions.  One says that the Act applies to students only until they graduate from a secondary school or exceed the age of twenty-one, whichever comes first.  *Id.* § 1412(a)(1)(A).  The other says that a "secondary school . . . does not include any education beyond grade 12."  *Id.* § 1401(27).  Plainly, then, a student who graduates from high school (or chooses not to finish high school) may not enroll in a college or community college and expect the State to pay for the tuition and any special education services.  The Act draws a clear line on this point.  *See, e.g.*, *K.L. v. R.I. Bd. of Educ.*, 907 F.3d 639, 643–44 (1st Cir. 2018) (concluding that a free appropriate public education "includes only education up through a 'secondary education,'" notwithstanding the Act's provision for transition services to reach postsecondary goals) (quotation omitted)); *J.D. ex rel. J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 64, 71 & n.6 (2d Cir. 2000) (discussing a school district's refusal to implement a plan at a boarding school for academically gifted students on a college campus due to its postsecondary nature).

This conclusion does not change with respect to classes eligible for high school and college credit offered on a Kentucky postsecondary campus as with the Craft Academy. Consistent with the Act's respect for "the primacy of States in the field of education," *Rowley*, 458 U.S. at 208, the Act defers to state law in classifying which courses count as secondary education and which do not, noting that a "secondary education" is "determined under State law," 20 U.S.C. § 1401(27).  Kentucky law creates several categories of schools, including "secondary" and "postsecondary" schools.  *Compare* Ky. Rev. Stat. § 158 (statutes concerning the school system for preschool, elementary, and secondary education), *with id.* § 164 (statutes outlining the postsecondary school system); *see also Univ. of Cumberlands v. Pennybacker*, 308 S.W. 3d 668, 676–78 (Ky. 2010) (distinguishing funding of primary and secondary education from higher and postsecondary education).

Kentucky law treats Craft as a "postsecondary" school because it delivers "a college-level course of study" on a college campus, *see* Ky. Rev. Stat. § 164.002(5)–(6), placing its classes a

rung above the "secondary level," *Higher Education*, *Webster II New College Dictionary* 534 (3d ed. 2005) (defining "higher education" as "[e]ducation beyond the secondary level, esp[ecially] at the college level"). When Craft permits high school students to join the residential program on the Morehead State campus, it describes the service as permitting students to receive dual credit and to enroll at their "high school and postsecondary institution simultaneously." Ky. Rev. Stat. § 164.002(6). After finishing Craft, Jack Bradley received diplomas from duPont Manual High School and from Craft, making Craft the postsecondary institution in the arrangement. Sure enough, if Jack had sought special education services at duPont Manual High School, say counseling, during those two years, the Act would have applied to those services. But that is not what the Bradleys sought. They sought to require duPont and Craft to apply these services on a residential college campus, hours away from the high school, even after Jack "changed his residence to Morehead" State. R.1-5 at 11.

Other features of the Craft program confirm its postsecondary status. Craft is located on a college campus at Morehead State, not a high school, physically placing Craft in the Commonwealth's "[p]ostsecondary education system." Ky. Rev. Stat. § 164.001(17). Students take classes with undergraduates pursuing postsecondary school degrees, not just with other high schoolers seeking their secondary school diploma, and they live in a residential dormitory at Morehead State. Morehead State funds Craft, not Jefferson County's primary and secondary education budget. 2021 Ky. Acts 1109. And Morehead State's board of regents, not Jefferson County's board of education, bears responsibility for reporting about Craft to the State. Ky. Rev. Stat. § 158.140(3)(a); *cf. id.* § 157.320(3)–(4), (11) (treating secondary schools as under a local board of education's authority). That high schools receive funding under the Act for students who remain eligible to receive a secondary school education there—and that Craft does not receive funds under the Act—confirms that the State does not consider Craft to provide secondary school education.

*Second*, the relevant state and federal agencies have come to the same conclusion. Consistent with the language of the Act and state law, the Kentucky Department of Education has offered guidance that precludes eligibility for special education services in this setting. It says that college-level courses, even those offered in a dual-credit setting, count as

Case 3:20-cv-00450-GNS-CHL   Document 56   Filed 12/21/23   Page 9 of 21 PageID #: 2542

(9 of 21)

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 7

postsecondary classes. Students thus do not have a right to them and any related support services on the college campus as part of a free appropriate public education. Ky. Dep't of Educ., *Questions and Answers Related to Dual Credit Courses and Students with Individualized Education Programs (IEPS)*, 2 (Nov. 1, 2022) ("Under Kentucky law, dual credit courses are defined as college-level courses, which means students do not have a right to [free appropriate public education] under the [Individuals with Disability Education Act] in a dual credit course. The [Act], in Kentucky, applies to elementary and secondary, but not post-secondary, education." *Id.* at 3.). No one in this case challenges the Department's authority to implement these state laws.

Guidance provided by the U.S. Department of Education comes to a similar conclusion about institutions like Craft. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). It classifies "postsecondary education" as "education and training by institutions of higher education" and concludes that a free appropriate public education "does not include postsecondary education." U.S. Dep't of Educ., *Increasing Postsecondary Opportunities and Success for Students and Youth with Disabilities*, 1, 4 (2019). It notes that school districts may only "provide or pay for services that constitute [a free appropriate public education] in postsecondary education settings [when] the education provided is considered secondary school education in the State." *Id.* at 4. And it further provides that "States have the flexibility" to "provide guidance" and "make clear" whether "permitting high school students to attend classes at a postsecondary education institution . . . is considered secondary school in the State for students in grade 12 or below." *Id.* at 9–10.

The Bradleys have not come to grips with these features of federal and state law and the difficulties of requiring secondary education services to be provided full time on a residential college campus. It is one thing, to repeat, to permit dual-enrollment students to obtain these services at a high school at various times of the day or week while the student attends classes on a college campus; it is quite another to insist that they be provided only on the college campus—or for that matter, to expect that they be provided at all hours of the day when a student resides on a college campus over 130 miles away from the student's high school.

*Third*, any doubt about this conclusion must be resolved in favor of the school districts. Congress passed the Act under its spending clause powers. Such legislation operates as a type of contract between the federal government and participating States. *See Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014). In return for federal funds, each State agrees to satisfy the requirements of the Act when it comes to providing a free appropriate public education and other services. In this setting, the Court has explained that States must comply only with clearly written terms in the Act, not uncertain or ambiguous ones. *South Dakota v. Dole*, 483 U.S. 203, 206–07 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Else, the nature of the bargain could change after each State made its decision to enter into the funding agreement. *See Jones v. City of Detroit*, 20 F.4th 1117, 1120 (6th Cir. 2021) ("A school district would justifiably be surprised to learn that, by accepting federal funds, it could be subjected to a monetary judgment mentioned nowhere in the statute[.]"). The Bradleys have not shown that, in the context of dual-enrollment courses, the Act clearly imposes a duty on States to provide special education services to a student only on his college campus, as opposed to the physical location of his high school. *See Holland v. Kenton Cnty. Pub. Schs.*, No. 22-5874, slip op. at 6 (6th Cir. Dec. 21, 2023).

All in all, the district court correctly decided that the Act does not obligate Kentucky school districts to provide support services at universities, as opposed to the student's high school, in the context of dual-credit classes.

But doesn't this conclusion sweep too broadly? Don't States have an obligation to provide special education services for Advanced Placement classes offered on a high school campus—classes that look like dual-credit classes in that they go toward a student's high school requirements and often may be used for college credit? Kentucky law accounts for the point. The prohibition on coverage under the Act for "dual enrollment" classes, it says, applies only to a student "enrolled in a high school and postsecondary institution simultaneously." Ky. Rev. Stat. § 164.002(6). It adds that a "dual credit" class means that a student who passes the class automatically earns both high school and college credit. *Id.* § 164.002(5). That does not describe an AP class, which is taught on a high school campus and not through enrollment in a postsecondary institution. *Compare* Ky. Council on Postsecondary Educ., *Dual Credit Policy for*

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 9

*Kentucky Public and Participating Postsecondary Institutions and Secondary Schools*, 5 (2023) ("When students participate in a dual-credit course at their high school with a credentialed high school teacher . . . the high school shall provide accommodations[.]"), *with id.* at 6 (providing that "if students are taking a course at the postsecondary institution or online," then "[t]he postsecondary institution shall implement its own Section 504 policies and procedures regarding accommodations").

This distinction makes sense in other ways. A school district determines which AP classes are available to high school students. But a school district does not control the educational offerings of a Kentucky postsecondary institution. College credit for an AP class also is not automatic. In contrast to dual-credit or dual-enrollment courses, college credit for an AP class turns on a college's policies and on the student's performance on the AP test administered by the College Board, an organization separate from Kentucky's postsecondary system that oversees the AP curriculum and examinations. Ky. Rev. Stat. § 164.002(1), (3). Our conclusion, in short, does not limit a student's access to special education services in connection with an AP class offered at the high school.

What of the reality that Kentucky law at one point calls Craft a "high school"? *Id.* § 164.7874(11) (listing "any Kentucky public high school" and Craft as types of high schools for the purpose of awarding college scholarships post-graduation). But this provision refers only to eligibility for college scholarships. *See id.* No one doubts at any rate that Craft caters to high school students. But that does not mean it offers a secondary school education. It does not mean that a student may insist on receiving special education services under the Act solely on the college campus. And it does not mean that the Act requires the college to permit the services on its campus. *See Holland*, slip op. at 6. Permitting Craft students to obtain college scholarships does not preclude the possibility that its on-campus courses are ineligible dual-credit educational offerings under the Act. A school may serve high-school-age students and still provide a postsecondary education under state law. Ky. Rev. Stat. § 164.002(5)–(6).

What of the related reality that Kentucky law treats its secondary school curriculum as including dual-credit and dual-enrollment courses? *See id.* § 160.348(2). Again, the availability of high school credit for such classes does not prove that the educational offering, when offered

No. 22-6091          *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*          Page 10

on a college campus, is secondary as opposed to postsecondary.  Recall that the Craft students exclusively take postsecondary courses with undergraduates in a residential environment on a college campus.  That might explain why Jefferson County's duPont Manual High School receives federal funds under the Act to support Jack's secondary school education but Craft, so far as the complaint notes, does not receive federal funds for its offerings.

What of the possibility that the Act denies Kentucky the authority to treat dual-credit, dual-enrollment programs in this way given the Act's reference to "transition services"?  Individual education plans, it is true, must reflect "appropriate measurable postsecondary goals based upon age-appropriate transition assessments related to . . . education" and "transition services" to assist in reaching those goals.  20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(aa), (bb).  Yet the Act never mandates that school districts provide a free appropriate public education for postsecondary education in the same way it mandates such services for "preschool, elementary school, [and] secondary school education."  *Id.* § 1401(9)(C).  Notably, the Act does not prohibit a State from permitting such individualized services and plans.  *See id.* § 1401(34); 34 C.F.R. § 300.320(b).  It just defers to school district discretion and state law in making this call.

Put another way, the fact that secondary schools must set *goals* for postsecondary achievement, such as employment, does not mean that the secondary school must also assume responsibility for providing those postsecondary resources.  So too for plan accommodations when it comes to a student's postsecondary educational environment.  That Jack Bradley's plan said that he needed a "residential college experience" as part of the Act's transition services, R.1 at 7, does not mean the State must pay for or provide the service in whatever setting the family prefers.  The Act's guarantee of a free appropriate public education does not empower Jack to take *any* coursework of his choice.  That education must "conform[]" to his plan.  20 U.S.C. § 1401(9)(D); *see Gibson v. Forest Hills Loc. Sch. Dist. Bd. Educ.*, 655 F. App'x 423, 438 (6th Cir. 2016) ("To ensure that [postsecondary] goals are realized, the [Individuals with Disabilities Education Act] also requires the [plan] Team to list the services that the school district will provide[.]").

All of this would explain why Kentucky previously provided him with special education services in a dual-credit course at a local university within his school district.  The school district

No. 22-6091         *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*         Page 11

and his plan authorized that program, and the Bradleys have neither maintained nor shown that those services were provided at that university's campus rather than at his high school. In contrast, the plan did not commit Kentucky to supplying Jack with services at Craft, particularly after the Kentucky Department of Education said that state law did not permit it. Under these circumstances, his parents could not unilaterally enroll him in a program across the state and expect his plan to cover it without the school district's approval. *See N.W. ex rel. J.W. v. Boone Cnty. Bd. of Educ.*, 763 F.3d 611, 617 (6th Cir. 2014).

This conclusion does not alter a State's other nondiscrimination responsibilities when it comes to high school students who apply for dual-credit and dual-enrollment classes in a college setting. Whether it's the application process or the process of offering a postsecondary education, the State may not discriminate against students with disabilities. *See* 42 U.S.C. § 12132; 29 U.S.C. § 794(a). Any accommodation and antidiscrimination requirements in this postsecondary setting, however, arise under the Americans with Disabilities Act, the Rehabilitation Act, and other provisions of federal and state law, not the Individuals with Disabilities Education Act's promise of a free appropriate public education.

B.

To that point, the Bradleys also appeal the dismissal of their claims under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act. But in doing so, they offer no explanation why the fortunes of these claims differ from their claim under the Individuals with Disabilities Education Act. As we have said before, a claim under the Americans with Disabilities Act or Rehabilitation Act will not gain traction if it turns solely on an alleged denial of a free appropriate public education. *N.L. ex rel. Mrs. C. v. Knox Cnty. Schs.*, 315 F.3d 688, 695–96 (6th Cir. 2003). That is precisely the problem here. The Bradleys simply do not show how the Commonwealth separately violated the provisions of these distinct Acts. *See, e.g.*, R.1 at 11 ("Based solely on his disabilities, [Jack] was excluded from participation in the Craft Academy program unless he declined the receipt of special education and related services called for in his [plan].").

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 12

The Bradleys push back that two Supreme Court decisions require us to revive their Americans with Disabilities Act and Section 504 claims.  *See Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 146–47 (2023) (holding that the Individuals with Disabilities Education Act's exhaustion requirement did not preclude an Americans with Disabilities Act lawsuit because the plaintiff sought compensatory damages that the first Act did not provide); *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (concluding that the plaintiffs need not exhaust Individuals with Disabilities Education Act administrative proceedings if the lawsuit's gravamen is something other than the denial of a free appropriate public education).  But those cases address a different question:  When must students exhaust their procedural remedies under the Individuals with Disabilities Education Act before bringing claims under these other laws?  *See* 20 U.S.C. § 1415(l).  Yet no one disputes that the Bradleys satisfied that exhaustion requirement.  These cases thus do not apply in today's setting and do not change the district court's view and our view—that claims under these Acts must rely on more than the alleged denial of a free appropriate public education.

We affirm.

———————————

**DISSENT**

———————————

HELENE N. WHITE, Circuit Judge, dissenting.   The Individuals with Disabilities Education Act (IDEA) requires that states accepting federal funds provide a "free appropriate public education" to every student with a disability.   20 U.S.C. § 1412(a)(1).   A "free appropriate public education" (FAPE) is defined as "special education and related services" that "are provided in conformity with the individualized education program" and includes "an appropriate preschool, elementary school, or secondary school education in the State involved."  *Id.* § 1401(9).   At issue in this case is Kentucky's responsibility to provide a student's "special education and related services" when the student fulfils his or her secondary-school educational requirements by completing dual-credit, dual-enrollment courses in Kentucky.   The majority concludes that the state has no such responsibility under the IDEA.   Because Kentucky treats such dual-credit, dual-enrollment courses as secondary education, I disagree.

## I.

Jack Bradley started in ninth grade at DuPont Manual High School, a public school in Jefferson County.   At the time, because of Jack's disabilities, the school had in place an individualized education program (IEP) developed by his IEP team, which included his parents and representatives from, Jefferson County Public Schools (JCPS).   *See* 20 U.S.C. § 1414(d). Among other things, Jack's IEP obligated JCPS to provide him with accommodations in his classes and direct instruction in necessary skills such as social communication, executive functioning, and time management.   His IEP team determined that these direct services and support were needed to provide him with a FAPE, and for several years in high school, Jack progressed substantially with the benefit of his IEP.

One of Jack's goals, as determined by his IEP team, was "participation in dual credit courses before high school graduation."   R.23-1 at PageID 673.   When Jack was in 10th grade, he successfully completed a dual-credit, dual-enrollment course offered by his high school in partnership with the University of Louisville.   Jack's high school implemented his IEP while he

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 14

took that course.  Another goal was "to experience living on a college campus in order to build skills needed to learn how to navigate living, working, and attending college classes on a college campus."  *Id.*  With that in mind, Jack applied to and was accepted at Craft Academy, a residential program for gifted high-school students.  Housed on the campus of Morehead State University, Craft Academy is offered to high-school students as a means to complete their junior and senior years of high school by fulfilling their high-school requirements through Morehead State coursework.  The students remain enrolled at their public high school, which continues to receive funding from the state for the student.  Craft, on the other hand, is funded through private philanthropy and state appropriations to Morehead State.  At the conclusion of the program, students may receive a diploma from both Craft Academy and their public high school.  Ky. Rev. Stat. § 158.140(3).

The Bradleys told Jack's IEP team during the 2016-2017 school year that Jack planned to apply to and, if accepted, attend Craft Academy beginning the following year.  Initially, JCPS believed it could implement Jack's IEP there.  However, in May 2017, the Kentucky Department of Education advised JCPS of its position that Craft Academy was not covered under the IDEA, while acknowledging that courts had not resolved the issue.  *See* R.11-3.  JCPS thus informed Jack it would not provide support or services at Craft Academy, although Jack was free to enroll and receive high-school credit for his coursework.  Jack enrolled at Craft Academy and his parents paid for his support services.  The Bradleys now challenge the determination that JCPS could not implement his IEP while he pursued his high-school diploma at Craft Academy because Craft Academy is not "secondary" education under the IDEA.

## II.

JCPS was not obligated to implement Jack's IEP while he took courses at Craft Academy if such coursework is not considered "secondary" education under Kentucky law.  The majority concludes that Craft Academy is properly categorized as "postsecondary education" and accordingly Jack had no right to have his IEP implemented while he attended Craft.  But Kentucky law treats Craft Academy and other dual-credit, dual-enrollment courses offered to public high- school students as a core part of its *secondary* education, notwithstanding that students are receiving college-level instruction.

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 15

Kentucky law requires each high school to "offer a core curriculum of AP, IB, dual enrollment, or dual credit courses" and to make such courses available to any qualifying high-school student.[1] Ky. Rev. Stat. § 160.348.   Courses taken as a part of Craft Academy are dual-enrollment, dual-credit.   *Id.* § 164.002 (defining "dual credit" and "dual enrollment" as "a college-level course of study . . . including participating in . . . Craft Academy for Excellence in Science and Mathematics").   When a student takes dual-enrollment, dual-credit courses, including at Craft, the student is "enrolled in a high school and postsecondary institution simultaneously." *Id.* The majority seizes on this definition to argue that Craft Academy must be the "the postsecondary institution in the arrangement." Maj. Op. at 6.   But this ignores the remainder of the definition:  when taking these courses, students remain "enrolled in a high school."   And the IDEA covers "educational opportunities . . . through the academic level associated with completion of secondary school." *K.L. v. Rhode Island Bd. Of Educ.*, 907 F.3d 639, 643 (1st Cir. 2018).   Thus—contrary to the majority's position—as long as a student remains enrolled in public high school and is receiving high-school credit for the coursework, that coursework is necessarily "secondary" education.

The majority argues that "Kentucky law treats Craft as a 'postsecondary' school because it delivers 'a college-level course of study' on a college campus, placing its classes a rung above the 'secondary level.'" Maj. Op. at 5–6 (citations omitted).   But "postsecondary" does not mean "college-level" coursework, or coursework "a rung above" secondary; it refers to "a stage of education coming after secondary education." *Postsecondary*, *Oxford English Dictionary*, <https://doi.org/10.1093/OED/6895610148> (last visited Dec. 5, 2023); *see also Postsecondary*, *Merriam-Webster's Collegiate Dictionary*, https://unabridged.merriam-webster.com/collegiate/postsecondary (last visited Dec. 5, 2023) ("[O]f, relating to, or being

---

[1] Kentucky law "recognizes that all students have the right to participate in a rigorous and academically challenging curriculum," and states that "[a]ll students who are willing to accept the challenge of a rigorous academic curriculum shall be admitted to" AP, IB, and dual-enrollment courses "if they have successfully completed the prerequisite coursework or have otherwise demonstrated mastery of the prerequisite content knowledge and skills as determined by measurable standards." Ky. Rev. Stat. § 160.348(2). There is no question that Jack satisfies this standard.

No. 22-6091          *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*          Page 16

education following secondary school."). Coursework is thus not properly considered "postsecondary" if taken in pursuit of a secondary diploma, regardless of its difficulty level.[2]

The majority acknowledges this when it agrees that AP courses, which are undoubtably "college-level," are secondary education.[3] Its attempts to distinguish AP coursework from dual-credit, dual-enrollment courses like those offered at Craft Academy are unpersuasive. True, after completing an AP course, a student earns automatic credit only toward a high-school diploma; the student's college or university has discretion whether to give college credit for the course. But the same is true of dual-credit, dual-enrollment courses. As with AP courses, a student's public high school gives the student high-school credit for dual-credit, dual-enrollment courses. And as with AP courses, any credit received by a student from a dual-credit, dual-enrollment course like those offered at Craft Academy may or may not be accepted by the student's college or university, depending on its transfer and credit policies.

In any event, whether college credit is automatically guaranteed upon completion of a course, or whether coursework is "college-level," is not the critical question. Nor is the location or provider of the coursework controlling. The critical question is whether Kentucky offers the coursework as a means to obtain credit towards a high-school diploma, in which case that course is "secondary education" when completed by a high-school student for high-school credit. Not only does Kentucky law allow for coursework taken at Craft Academy and other dual-credit, dual-enrollment coursework to count towards a student's high-school degree, it requires each high school to make such coursework available as part of its "core curriculum." Ky. Rev. Stat. § 160.348; *see id.* § 164.002 (including Craft Academy in definition of "dual-credit" and "dual-enrollment").

---

[2]Students enrolled in these courses are thus situated differently from high-school aged students who may finish their secondary education early and enroll in a postsecondary institution. If a student has completed their secondary education, any college-level coursework would be considered postsecondary.

[3]The majority opinion relies on materials from the Kentucky Department of Education stating that dual-credit courses are postsecondary and therefore not covered by the IDEA. For example, it cites the Kentucky Department of Education's *Questions and Answers Related to Dual Credit Courses and Students with Individualized Education Programs (IEPS).* But that Q&A contradicts the majority opinion: it reasons that because dual-credit courses are "college-level courses," they are postsecondary. But as the majority acknowledges, AP courses are college-level yet still covered by the IDEA. This contradiction underscores that whether a course is "secondary" cannot turn on the difficulty of the coursework or location of the class; but instead, whether it is offered as part of the secondary curriculum.

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 17

The majority emphasizes one aspect of Craft Academy that it believes makes it even less likely to fall under the IDEA: that it is located on a college campus far from Jack's home school district. But whatever arguments could be made about individual courses a high-school student independently enrolls in on far-away college campuses, this case is about Craft Academy. Craft Academy is open only to high-school students. Students like Jack remain enrolled at their high schools, and the public high schools continue to receive funding for the students. When the state chooses to offer a program exclusively to high-school students as a means of obtaining their diploma from their public high school, the school district is not relieved of its obligations simply because the program is offered outside the district. And the facts of this case underscore that school districts are willing to have students' IEPs travel with them and thus that the majority's focus on location is misguided: Jack's IEP team was already taking steps towards finding him support near Craft Academy.

Under the majority's holding, students with disabilities seeking to take advantage of a core part of their high school's curriculum would be forced to do so without the benefit of their IEP. And school districts—which still receive funding for students attending Craft Academy— would be excused from providing support to these students simply because the coursework is advanced. Such a result is inconsistent with the IDEA, which seeks to support students with disabilities until high-school graduation. *See, e.g.*, *K.L.*, 907 F.3d at 643.

### III.

Accepting that Jack's coursework while at Craft Academy is secondary, the Bradleys still must show that the courses offered at Craft Academy were necessary to provide Jack with a free appropriate public education. *See U.S. Dep't. of Educ.*, *Increasing Postsecondary Opportunities and Success for Students and Youth with Disabilities* Q6 (2019). The district court based its decision on its erroneous determination that JCPS had no obligation to implement Jack's IEP at Craft Academy because his coursework there was not "secondary." And although JCPS argued in passing in the district court that Jack's IEP team did not determine that attendance at Craft Academy was necessary, the district court did not decide that issue and issues of fact related to it

No. 22-6091        *Bradley, et al. v. Jefferson Cnty. Public Schs., et al.*        Page 18

remain.[4]  Thus, the questions whether Jack's IEP called for his attendance at Craft Academy and support services from JCPS there, *see* 20 U.S.C. § 1401(9) (support services only required "in conformity" with IEP), and if not, whether the IEP offered an "appropriate" education for Jack, *id*, are not properly before us. Accordingly, I would remand to the district court for further proceedings.

## IV.

Under Kentucky's education scheme, Craft Academy and other comparable dual-credit, dual-enrollment courses are a core part of the high-school curriculum, offered exclusively to students who have not yet completed their secondary education as a means to do so.  As such, they are secondary education under Kentucky law.  Because the majority concludes that they are postsecondary education, and therefore the state has no obligation to provide the protections of the IDEA to students enrolled in these courses, I dissent.

---

[4] For example, the Bradleys argue that the school district initially agreed to provide support while Jack attended Craft Academy, suggesting that his IEP team believed attendance there was necessary.  Appellant Br. 4.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 22-6091

JACOB BRADLEY aka Jack Bradley; DANIEL BRADLEY;
JUDITH BRADLEY,

     Plaintiffs - Appellants,

     v.

JEFFERSON COUNTY PUBLIC SCHOOLS; KENTUCKY
DEPARTMENT OF EDUCATION; MOREHEAD STATE
UNIVERSITY,

     Defendants - Appellees.

**FILED**
Dec 21, 2023
KELLY L. STEPHENS, Clerk

Before:  SUTTON, Chief Judge; WHITE and BUSH, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Kentucky at Louisville.

THIS CAUSE was heard on the record from the district court and was submitted on the briefs without oral argument.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

_____
Kelly L. Stephens, Clerk